MARTHA P. CHASE, Administratrix,

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Sagadahoc.   Opinion September 20, 1886.

*Railroads.   Contributory negligence.   Farm crossing.*

It is negligence *per se* for a person to cross a railroad track without first looking and listening for a coming train. If his view is obstructed he must listen carefully; and to do this when riding with bells attached to his team, he must stop his horse.

Whether a railroad company is under an obligation to signal the approach of trains at a farm crossing, when used by the employees of an ice company in prosecuting its business, the court express no opinion.

ON exceptions and motion to set aside the verdict.

An action by the administratrix of Edwin F. Chase for personal injuries received while crossing the defendant's railroad at a private crossing in Richmond, February 24, 1882.

The case has once before been considered by the law court and is reported in 77 Maine, 62.

It appeared by the evidence introduced at the trial, that before the location of the railroad, one Blanchard lived on the farm near the river, and had an ordinary farm way from his house to

the highway; that when the defendant's railroad was constructed in 1850, it crossed this farm between the highway and the house, crossing this private way; that the railroad was fenced on both sides, with gates on this way in both fences; that the way was used only as a farm way, and the crossing only as a farm crossing down to 1870; in 1880, Kidder, the owner of the farm, sold land below the railroad to the Knickerbocker Ice Company, and granted them the right to use the way, from the highway to the land sold, crossing the railroad, for themselves, their workmen, and all persons having business to transact with them; that in the winter of 1882, Kidder, at the request of the ice company, took down the gates; that the plaintiff's intestate was at work for the ice company, and was on the way to the river to work for them when the accident happened. The defendant contended that said Edwin F. Chase, at the time he received the alleged injury, was not, as against the defendant, in the rightful use of the way.

The verdict was for the plaintiff in the sum of three thousand seven hundred and seventy-five dollars, and the defendant moved to set this aside as being against evidence and because the damages were excessive. The defendant also alleged exceptions to certain instructions of the presiding justice.

*J. W. Spaulding* and *F. J. Buker*, for the plaintiff.

This is not a case of right of way by adverse user for a particular purpose, or by grant for specific use, as in *Parks* v. *Bishop*, 120 Mass. 340; *Atwater* v. *Bodfish*, 11 Gray, 150.

It is a general right of way to the land east of the railroad, though used only for special purpose for farm from 1853 to 1870. Then for farm and ice purposes. *Holt* v. *Sargent*, 15 Gray, 102.

The cases are numerous where damages have been recovered for injuries at private crossing, and in some instances by those not entitled of right to use the crossing. *Murphy* v. *B. & A. R. R. Co.* 133 Mass. 121; *Sweeny* v. *O. C. &c. R. R. Co.* 10 Allen, 372; *Randall* v. *Conn. River R. R. Co.* 132 Mass. 269; *Barry* v. *N. Y. C. &c. Railroad Co.* 13 Am. & Eng.

R. R. Cas. 615; (92 N. Y. 380); *Thomas* v. *Delaware, &c. R. R. Co.* 12 Reporter, 739; (8 Fed. Rep. 728); *O'Connor* v. *B. & L. Railroad Co.* 135 Mass. 362; (15 American and English, 362).

The doctrine contended for by the defendant is against public policy, as well as against the policy of this defendant itself. It has been applauded by all our citizens, with reason, too, for its efforts in aid and encouragement of the slumbering industries of the state; in every instance it has offered and afforded accommodation and conveniences for those engaged in building up and carrying on business enterprises contiguous to its road. In this case, it built a little station close by these Knicker-bocker Ice Houses and Haynes & DeWitt Ice Company's houses, for the convenience of these two ice companies in carrying their agents and employees back and forth.

This road leading across the railroad is for the convenience of Knickerbocker Ice Company, and no one else. It is the only route for teams from the public ways to its premises. If the Railroad Company can stop their crossing, then it can stop the business, for there is no public convenience and necessity for the way. But we say again that the defendant is not aggrieved at this ruling. The evidence all the way along shows a license to the Knickerbocker Ice Company and their employees to use *a* crossing, and this is the only one they could use. They could not use either of the other two in the vicinity without trespassing on other land owners. The building of the station shows in the most emphatic manner the expression of a wish on the part of the railroad company to promote the ice business there, and it must be held to have knowledge of the fact that the business could not be carried on without employing large numbers of teams which could only reach the premises by this crossing. Many of the employees went back and forth on the trains every day, and sometimes whole carloads of men were brought. There is no difficulty in finding the license nor the manner in which the railroad company was compensated for it.

The questions of negligence of the defendant and contributory negligence of the plaintiff were for the jury. *Webb* v. *P. & K.*

*R. R. Co.* 57 Maine, 117 ; *Larrabee* v. *Sewall*, 66 Maine, 376 ; *Com.* v. *R. R. Co.* 126 Mass. 69 ; *Hinckley* v. *R. R. Co.* 120 Mass. 264 ; *Eaton* v. *R. R. Co.* 129 Mass. 364 ; *O'Connor* v. *R. R. Co.* 135 Mass. 352 ; *Copley* v. *R. R. Co.* 136 Mass. 6 ; *Tyler* v. *R. R. Co.* 137 Mass. 238 ; *R. R. Co.* v. *Van Steinburg*, 17 Mich. 99 ; *R. R. Co.* v. *Stout*, 17 Wall. 657 ; *R. R. Co.* v. *McElwee*, 67 Pa. St. 311 ; *Salter* v. *R. R. Co.* 88 N. Y. 42 (8 Am. & Eng. R. Cas. 437,) ; *Dobiecka* v. *Sharp*, 88 N. Y. 203 (8 Am. & Eng. R. Cas. 485,) ; *Barry* v. *R. R. Co.* 92 N. Y. 289 (13 Am. & Eng. R. Cas. 615,) ; *Nehrbas* v. *R. R. Co.* 14 Am. & Eng. R. Cas. 670, (Cal.) ; *R. R. Co.* v. *Com.* 13 Bush. 388 (26 Am. R. 205, note,) ; *R. R. Co.* v. *Fitzsimmons*, 22 Kans. 686 (31 Am. R. 203, note,) ; *Railroad Co.* v. *Collarn*, 73 Ind. 261 (38 Am. R. 134,) ; *Bradley* v. *Boston & Maine Railroad*, 2 Cush. 539 ; *Linfield* v. *R. R. Co.* 10 Cush. 569 ; *Com.* v. *Railroad Co.* 101 Mass. 202 ; *Bailey* v. *New Haven, &c. Co.* 107 Mass. 497 ; *Norton* v. *Eastern Railroad Co.* 113 Mass. 369 ; *Eaton* v. *Fitchburg Railroad Co.* 129 Mass. 365 ; *Lesan* v. *Maine Cen. Railroad Co.* 77 Maine, 85.

*Drummond and Drummond*, for the defendant.

The railroad took this land for their roadway, subject, at most, to the incumbrance of the farm crossing, and were bound to pay, and the presumption is, *did* pay damages accordingly. Considering the nature of the use to which the company must put the land, the damages for taking it would be diminished by the easements to which it should be subjected ; and there is a vast difference between an easement for a farm crossing and an easement for a way upon which, as was claimed at the trial, there is more travel than upon the majority of the highways in the town. The imposition of a greater easement is the basis of the company's right to damages for laying out a way over it. That the easement of a railroad in its road-bed is property, for the taking of which, or the encumbering of which by laying out a way over it, the company is entitled to damages, under the Constitution, is now well settled. *Old Colony, &c., Railroad Co.* v. *County of Plymouth*, 14 Gray, 155. This decision was

affirmed in *Grand Junction R. & D. Co.* v. *Middlesex*, 14 Gray, 553. This principle has been fully recognized by the legislation of this state. Chapter 223 of Laws of 1880.

"The interest of a railroad company in its location, although technically an easement, is not limited to an ordinary right of way, such as is acquired for highways, but it justifies a use of the land for all the purposes of a railroad. Its possession, except at crossings established by law, is permanent in its nature, and practically exclusive, such possession being essential to a safe and effective working of its machinery." Pierce on Railroads, p. 159.

"The landowner, where a right of way is not reserved by agreement, or fixed by statute, has no right to cross a location which has divided his land." Pierce on Railroads, pp. 160, 161.

In *Mason* v. *Kennebec & Portland Railroad Co.* 31 Maine, 215, it is held that a railroad company has the right to build an embankment for their road-bed across land so as to prevent communication between the two parts thus separated.

"The right acquired by the corporation, though technically an easement, yet requires for its enjoyment a use of the land, permanent in its nature, and practically exclusive." *Hazen* v. *Boston & Maine Railroad*, 2 Gray, 574, 580.

It is settled law that the taking of land for a railroad deprives the owner of all rights in the land, the exercise of which would interfere with the safe and convenient operation of the railroad. *Brainard* v. *Clapp*, 10 Cush. 6 ; *Curtis* v. *Eastern Railroad Co.* 14 Allen, 55, 58 ; see *Boston Gas Light Co.* v. *Old Colony & Newport Railroad Co.* 14 Allen, 444.

"As the railroad company would have the right to take the land for the purposes of their road, if the fee, instead of the easement had belonged to the plaintiffs, it must follow, either that there is no right to destroy, by a railroad, the liberty which an owner has of passing over his land from one part of it to the other, in common with other modes of occupying and using it ; or that the law has given some peculiar protection to the right to pass over the land of another, which it does not give to the right of passing over one's own land."

In this case, the case *Boston & Worcester Railroad Co.* v. *Old Colony Railroad Co.* 12 Cush. 605, was substantially overruled.

In *Clark* v. *The B. C. & M. Railroad Co.* 24 N. H. 114, it was held that a man can not have a "private way," in the statute sense, over his own land, and that the term "private way" in the statute refers to private ways laid out under the provisions of the statute.

In *March* v. *P. & C. Railroad Co.* 19 N. H. 378, it was suggested that such a way as a farmer has over his farm may be a "private way" within the meaning of the railroad laws, and, therefore, that a landowner was entitled to have suitable crossings made for his use. But this suggestion was expressly overruled in the case last cited, as well as anything looking in the same direction in *Dean* v. *Sullivan Railroad Co.* 22 N. H. 316. See *Horne* v. *Atlantic & St. Lawrence Railway Co.* 36 N. H. 440; *Conn. and Pass. Rivers Railroad Co.* v. *Hilton*, 32 Vermont, 43.

In *Troy & Boston Railroad Co.* v. *Potter*, 42 Vermont, 265, the preceding case was cited and approved.

In a case (*Ham* v. *Salem*, 100 Mass. 350) involving the same principle, the court says: "The company may reserve to the owner such rights of way or other rights as they deem proper; and the record will show that they are reserved. Such reservations may diminish his claim for damages. But no rights not thus reserved will exist." See *Presbrey* v. *O. C. & N. Railroad Co.* 103 Mass. 1; *Proprietors of Locks and Canals* v. *N. & L. Railroad Co.* 104 Mass. 1; *Old Colony Railroad Co.* v. *Miller*, 125 Mass. 1; *Drury* v. *Midland Railroad*, 127 Mass. 571; *Murphy* v. *Boston & Alb. Railroad*, 133 Mass. 121.

On the question of negligence counsel cited: *L. S. & M. S. Railroad Co.* 25 Mich. 274; *Wheelock* v. *B. & A. Railroad Co.* 105 Mass. 203; *Todd* v. *Railroad Co.* 3 Allen, 18; *Gahagan* v. *Railroad Co.* 1 Allen, 187; *Todd* v. *Railroad Co.* 7 Allen, 207; *Butterfield* v. *Railroad Co.* 10 Allen, 532; *Lucas* v. *Railroad Co.* 6 Gray, 64; *Gavett* v. *Railroad Co.* 16 Gray, 506; *Nichols* v. *Railroad Co.* 106 Mass, 463;

*Harvey* v. *Railroad Co.* 116 Mass. 269; *Grows* v. *Railroad Co.* 67 Maine, 100; *Kellogg* v. *Curtis*, 65 Maine, 59.

The plaintiff failed to prove that her intestate was in the exercise of ordinary care. It follows that if there is no proof on this point, or the proof is not sufficient, the action must fail. *Brown* v. *E. & N. A. Railway Co.* 58 Maine, 384; *Merrill* v. *Hampden*, 26 Maine, 234; *Dickey* v. *The Maine Telegraph Co.* 43 Maine, 492; *Grows* v. *Maine Central Railroad Co.* 67 Maine, 109; *Same* v. *Same*, 69 Maine, 412; *Plummer* v. *The Eastern Railroad Co.* 73 Maine, 591; Pierce on Railroads, page 298.

Among the Massachusetts cases to the same point are *Lane* v. *Crombie*, 12 Pick. 177; *Lucas* v. *N. B. & T. Railroad Co.* 6 Gray, 64; *Robinson* v. *F. & W. Railroad Co.* 7 Gray, 92; *Gahagan* v. *B. & L. Railroad Co.* 1 Allen, 187; *Warren* v. *Fitchburg Railroad Co.* 8 Allen, 227, 230; *Butterfield* v. *Western Railroad Co.* 10 Allen, 532; *Gavett* v. *M. & L. Railroad Co.* 16 Gray, 501; *Wilson* v. *Charleston*, 8 Allen, 137; *Murphy* v. *Deane*, 101 Mass. 455; *Chaffee* v. *B. & L. Railroad Co.* 104 Mass. 108; *Mayo* v. *B. & M. Railroad Co.* 104 Mass. 137; *Allyn* v. *B. & A. Railroad*, 105 Mass. 77; *Wheelock* v. *B. & A. Railroad*, 105 Mass. 203; *Crafts* v. *Boston*, 109 Mass. 519; *Prentiss* v. *Boston*, 112 Mass. 43; *French* v. *T. B. Railroad Co.* 116 Mass. 537; *Craig* v. *N. Y. & N. H. Railroad Co.* 118 Mass. 431; *Hinckley* v. *C. C. Railroad Co.* 120 Mass. 257; *Hickey* v. *B. & L. Railroad Co.* 14 Allen, 429; *Com.* v. *B. & L. Railroad*, 126 Mass. 61; *Com.* v. *B. & M. Railroad*, 129 Mass. 500.

The same rule exists in New York, 75 N. Y. 330.

According to the text books, the rule established in this State, as to the burden of proof, also prevails in Connecticut, Illinois, Indiana, Iowa, Massachusetts, Michigan, Mississippi, Georgia, Louisiana, North Carolina, Oregon and New York; and the opposite rule prevails in Alabama, California, Kentucky, Maryland, Minnesota, Missouri, New Jersey, Ohio, Pennsylvania, Wisconsin, and perhaps in Rhode Island and Texas.

In several of the latter States, however, the rule is expressly established by statute.

One author (favoring the latter rule) puts New Hampshire in the same list, citing 30 N. H., 188, and 35 N. H., 356. The cases do not sustain him, and repeated decisions affirm the rule prevailing in Maine. See 41 N. H. 44, 135, 317; *Liston* v. *Lyman*, 49 N. H. 566, and cases cited; *State* v. *Railroad*, 52 N. H. 528, 537, 550.

WALTON, J. We think the verdict in this case is clearly wrong. The rule is now firmly established in this State, as well as by courts generally, that it is negligence *per se* for a person to cross a railroad track without first looking and listening for a coming train. If his view is unobstructed, he may have no occasion to listen. But if his view is obstructed, then it is his duty to listen, and to listen carefully. And if one is injured at a railroad crossing by a passing train or locomotive, which might have been seen if he had looked, or heard if he had listened, presumptively he is guilty of contributory negligence; and if this presumption is not repelled, a recovery for the injury can not be had. These rules have been so recently and so fully considered by this court, that we refrain from discussing them further. It is sufficient to say that they are now the settled law of this State. *Lesan* v. *Railroad*, 77 Maine, 85; *State* v. *Railroad*, 77 Maine, 538; *State* v. *Railroad*, 76 Maine, 357.

The evidence in this case shows that the crossing where the deceased was injured was in one particular peculiarly dangerous. It was at the northerly end of a cut, and between the cut and the road leading westerly from the crossing, were high land and other obstacles, which would prevent one approaching from the west from seeing a train coming from the south for a considerable distance before reaching the crossing. This would make it the traveler's duty to listen, and to listen carefully and attentively. To do this, if riding in a sleigh, and especially if riding in a sleigh with bells attached, it would be necessary to stop his horse. For surely he could not listen carefully and effectually

without stopping his horse, and thus stilling the noise of his own team. And yet the deceased did not observe this caution. The evidence shows that he approached the crossing where he was injured, in a sleigh, with bells attached, his horse trotting. He did not stop his horse — he did not even reduce the speed of his horse to a walk. The result was such as might reasonably have been apprehended. Just as his horse's head reached the crossing, a train of cars which had been concealed from his view shot out of the cut and on to the crossing directly in front of him. When the train had passed, he was found lying within a few feet of the track, and, if not wholly unconscious, so badly injured that he was unable to speak, and he died within half an hour. Just how he was struck does not appear. The tracks of his horse and of his sleigh indicate that when the train shot on to the crossing in front of him, his horse turned quickly to the left, and that the momentum of the sleigh caused it to tip toward the track, and that the deceased was thrown out and fell so near to the track that some part of the passing train struck him and inflicted the injuries of which he died. Neither the horse nor the sleigh was struck,— at least no injuries were found upon either. But the driver was found, after the train had passed, fatally injured, as already stated. We can not doubt that if the deceased had stopped his horse at a proper distance from the crossing, so as to still the noise of his own team, and had then listened, he would have become aware of the near approach of the train, and the accident would have been avoided. He did not do so. We think the omission was negligence — contributory negligence,— and that an action for the injury can not be maintained.

Having come to a conclusion favorable to the railroad upon the motion to set aside the verdict, it is unnecessary to consider the questions raised by the exceptions. But perhaps we ought to add that the counsel for the railroad contend strenuously that the road has been guilty of no wrong ; that the crossing where this accident happened was a mere farm crossing ; that the deceased in attempting to use it was a trespasser ; and that the railroad was under no obligation to signal the approach of its trains to this crossing by either bell or whistle, and especially

that it owed no such duty to the deceased. But upon this branch of the case we express no opinion.

> *The motion is sustained, and the verdict set aside.*

PETERS, C. J., DANFORTH, LIBBEY, EMERY and FOSTER, JJ., concurred.