## CHARLESTON.

BEYEL v. NEWPORT NEWS &. M. V. R'D Co.

*(HOLT, Judge, absent.)

Submitted June 19, 1890.—Decided December 16, 1890.

1. RAILROAD COMPANIES—DAMAGES—CONTRIBUTORY NEGLIGENCE.
   Failure to ring a bell or blow a whistle on an engine, as required by the Code, c. 54, s. 61, is negligence for which a railroad company is chargeable; but this does not excuse a traveler on a highway crossing a railroad track from the exercise of such reasonable care and caution as the law requires, to ascertain whether a train is approaching the crossing.

2. RAILROAD COMPANIES—DAMAGES—CONTRIBUTORY NEGLIGENCE.
   The traveler and the company have mutual and reciprocal duties and obligations in such case, and, though a train has the right of way, the same degree of care and diligence to avoid collision is due from both. (*Co.* v. *Stead,* 95 U. S. 161).

3. RAILROAD COMPANIES—DAMAGES—CONTRIBUTORY NEGLIGENCE.
   It is the duty of a traveler on the highway crossing a railroad to look carefully for an approaching train, and if looking leaves any doubt, or the view is obstructed, he must also listen, before attempting to cross; otherwise, he will himself be guilty of negligence, which will prevent his recovery for an injury received in crossing. Obstructions rendering the view obscure and unreliable call for greater caution on his part.

*Simms & Enslow* for plaintiff in error, cited :
73 Pa. St. 504 ; 70 Wis. 216 ; 95 U. S. 697 ; 62 Ia. 624 ; 103 Ind. 31 ; Patt. R'y Dec. § 177 ; 49 N. J. L. 473 ; 59 Mich. 257 ; 28 Ohio St. 340 ; 39 N. Y. 358 ; 17 Or. 5 ; 37 Minn. 47 ; 33 Kan. 416 ; 64 Wis. 1 ; 78 Me. 346 ; 33 Ind. 335 ; 87 Ill. 454.

*Malcolm & Meal, McAllister & Blackwood* and *Gibson & Michie* for defendant in error.

BRANNON, JUDGE :

In October, 1887, Conrad Beyel brought trespass on the case in the Circuit Court of Cabell county against the

---

*Case submitted before Judge Holt's appointment.

Newport News & Mississippi Valley Railroad Company, to recover damages for bodily injury. He alleges that he was traveling, in a one-horse wagon, along a public highway which crossed the defendant's railroad, and while he was crossing it a locomotive ran against the wagon, whereby the horse became frightened and ran away, overturning the wagon, whereby he was thrown from it to the ground, and seriously injured. A jury awarded him one thousand eight hundred and seventy six dollars damages, and judgment was rendered for that sum, to which the defendant took this writ of error.

A motion by the defendant for a new trial raises an important question. Section 61, c. 54, Code 1887, enacts that a bell or steam-whistle shall be rung or whistled by the engineer or fireman of a locomotive at least sixty rods from the place where the railroad crosses any street or highway, and kept ringing or whistling for a time sufficient to give notice of the approach of a train before the street or highway is reached, and inflicts a penalty of not over one hundred dollars for its neglect; and that the railroad corporation shall be liable to any party injured for damages by reason of such neglect. Under this motion, we must say on the evidence that the defendant did not comply with this requirement, and therefore was guilty of neglect in not performing this duty. But was no duty resting on the plaintiff? 2 Shear & R. Neg. § 463, thus states the law:

"The rights of a traveler on the highway at a point where it is crossed on a level by a railroad are subordinate to those of the railroad company, so far as to require the traveler to give way to any train which is in sight or hearing, though not in such a sense as to give the company right to block up the highway, for its right is only given for the purpose of travel, not of storing its cars or goods. Both parties are, however, equally bound to use ordinary care; that is, such care as a prudent man would usually take under similar circumstances, the one to avoid committing, and the other to avoid receiving, injury."

"But when the statute requires certain precautions against accidents, and its requirements are disregarded, the party suffering damage is not entitled to recover, if he was him-

self guilty of negligence which contributed to the damage."
1 Redf. R. R. 586.

It is incumbent on persons using the highway to resort to and use all reasonable efforts on their part to foresee and avoid danger, and to the performance of this duty the law will hold them. A want of such care may be fraught with the most disastrous consequences, not only to themselves, but to the many traveling on railroads, and if to themselves, for want of such care, they must abide the consequences. 1 Ror. R. R. 532.

Failure to ring bell or blow whistle at crossings, though required by law, will not render the company liable, unless that be the proximate cause of the injury, and there be no such negligence by the plaintiff as will prevent his recovery. It is just as important that the plaintiff exercise reasonable care upon his part, when the negligence of defendants consists in the failure to observe a statute, as when it arises from any other omission or neglect. If, by statute, certain warnings or signals are required, and their absence be declared negligence, yet, unless the statute also absolves the injured party from the necessity of caution, and declares that the omission to comply with the statute shall render the company liable, the rule will still be the same with reference to contributive or comparative negligence as if there were no such statutory requirement, and the failure to give the signal will not raise a presumption that such failure was the cause of the injury. 1 Ror. R. R. 531. The statutes giving action for failure to ring bell do not confer such action irrespective of the injured party's own negligence. One whose own fault has contributed to his injury can not take advantage of these statutes to excuse his fault; and the omission to ring a bell is no excuse for the plaintiff's omission to look up and down the track. 2 Shear. & R. Neg. § 482. An omission would call for the public penalty, but the same omission might not call for civil damages.

Then, what is the duty of a person crossing a railroad on a highway? It is universally deemed negligence for any one to cross "without taking any precautions reasonably in his power to ascertain whether a train is approaching. As a general, but not invariable, rule, it is deemed negligence

to cross without looking continuously in every direction in which the tracks run, to make sure that the road is clear, and, if looking leaves any doubt, without also listening for approaching trains.  If the unexplained evidence shows that the injured person could certainly have seen the train in ample time to avoid it, if he had looked, it is to be presumed he did not look, and he is to be held negligent, as a matter of law."  2 Shear. & R. Neg. § 476.  "Not looking for a coming train is not merely an imperfect performance of duty; it is an entire failure of performance."  The traveler is bound to stop and look out for trains, and may not rush heedlessly, nor remain unnecessarily, on a spot over which the law allows engines of fearful power to be propelled.  1 Ror. R. R. 535.  Authorities to this effect are too numerous to cite further.

Let us now, in view of these legal principles, turn to the evidence.  The plaintiff was approaching the railroad in a wagon.  He had lived within about one hundred yards of the railroad for a considerable period; was familiar with the ground, and railroad crossing; had been accustomed to drive over it once or twice a week.  His very familiarity with it, perhaps, lulled him into forgetfullness.  He approaches the crossing.  He knows it is train time.  He stops to listen seventy five yards from the crossing, but here the hill was high, so as to shut out of view the railroad in the direction from which the train was coming.  The hill continues down to the railroad, where there is a cut, but lowers as it approaches the road, though it extends close to the track, and there is a cut, and also at some distance a curve.  When he stopped, the train was certainly not at the point where it should have whistled, as he drove in a slow walk down towards the railroad.  He himself says that he did not again stop or listen, but went straight to the railroad.  Though the hill extended down to the railroad, yet, at a point ten feet from the center of the track, one could see along the track one hundred and five feet, and, from the center of the track, one could see twice that distance, and then a curve prevents seeing further.  If he had stopped and looked, he might have seen the train.  Certainly, if he had stopped and listened, he could have

heard its approach, for others near there heard it coming nearly a mile away. His hearing was not defective; his sight was not. This was a dangerous place, as he knew, and therefore required all the more caution. Yet, when he gets near the track, he neither stops nor listens, as he himself says, knowing, too, the train was due. The nearest point at which he stopped or listened was seventy five yards from the track, where his view was cut off, and perhaps the facility of hearing diminished.

In *Railroad Co.* v. *Beale*, 73 Pa. St. 504, the line of railroad was obstructed from view of a traveler approaching a crossing in a wagon, and he did not come to a stop before crossing, and it was held to be contributory negligence, defeating recovery for the death of the traveler. SHARSWOOD, J., said : "The evidence of the plaintiff showed a clear case of contributory negligence in the deceased. The crossing at which he met with the injury which resulted in his death was a dangerous one, and, as he was well acquainted with it, there was the greater reason that he should exercise the utmost care and caution by stopping at the railroad before undertaking to pass over. It is very clear, that if he had done so, but for a few minutes, the accident would not have happened." "This evidence," said the judge in his charge, "is uncontradicted that there was a level piece of ground about ten feet wide between the hill or bluff and the first track, or siding on the approach to the track, from the valley upon which the deceased was traveling. It was his plain duty to have stopped at that place."

In this present case, as in that, there was a place near the track from which the train could be seen for a short distance, and could easily have been heard. Judge SHARSWOOD further said : "The duty of stopping is more manifest when an approaching train can not be seen or heard than where it can. * * * There never was a more important principle settled than that the fact of the failure to stop immediately before crossing a railroad track is not merely evidence of negligence for the jury, but negligence *per se*, and a question for the court. *Railroad Co.* v. *Heileman*, 49 Pa. St. 60. It was important, not so much to railroad companies, as to the public. Collisions of this character

have often resulted in the loss of hundreds of valuable lives of passengers, and will do so again if travelers crossing railroads are not taught their simple duty not to themselves only, but to others."

In the case of *Seefeld* v. *Railroad Co.*, 70 Wis. 216 (35 N. W. Rep. 278) the opinion, after referring to many cases, says : "The rule to be deduced from these cases is this : If the view of the traveler on the highway approaching a railroad crossing is so obstructed that he can not see an approaching train in time to stop his team before colliding with it, if he knows that a train is due at such crossing at or about such time, and if he is unable to hear the approaching train when his team is in motion, whether by reason of the force or direction of the wind, or of noises in the vicinity made by his own wagon, or other causes, ordinary care requires him to stop his team while he may do so, and listen for the train." In the United States Supreme Court, in *Railroad Co.* v. *Houston*, 95 U. S. 697, it was held that neglect to sound the bell on nearing a street did not relieve the traveler from listening and looking before attempting to cross. In *Schæfert* v. *Railroad Co.*, 62 Ia. 624 (17 N. W. Rep. 893) it was held that a person on a highway approaching a crossing, with knowledge that the view of an approaching train is to an extent obstructed, who allows his team to trot, and makes no effort to look or listen for eighteen rods from the track, can not recover. A railroad track is itself a warning. 2 Shear. & R. Neg. p. 280, § 476, note 1, citing *Mynning* v. *Railroad Co.*, (Mich.) 26 N. W. Rep. 514. In *Merkle* v. *Railroad Co.*, 49 N. J. Law, 473 (9 Atl. Rep. 680) it was held that a railroad is itself a warning of danger, and persons about to cross must make use of hearing and sight, and, if either is not available, the obligation to use the other is stronger, and, if one neglects this, he does so at his own risk. See *Wilcox* v. *Railroad Co.*, 39 N. Y. 358; *Railroad Co.* v. *Hunter*, 33 Ind. 335 ; *Havens* v. *Railroad Co.*, 41 N. Y. 296. The inquiry is whether it appears that the plaintiff could, by looking, have seen the train in time to avoid collision. If so, he should be nonsuited. *Baxter* v. *Railroad Co.*, 41 N. Y. 502.

In the Illinois case (*Railroad Co.* v. *Loomis*, 13 Ill. 548)

it was held that failure to give signal did not throw the *onus* on the company, until proof is given tending to show that injury resulted from its want. In this cause there is no conflict in evidence as to this feature, and in note to *Wilcox* v. *Railroad Co.*, 100 Amer. Dec. 440, several cases are cited to show that in such state of the case and where plaintiff appears chargeable with negligence, the court should so hold as matter of law. I think that while the question is one of mixed fact and law, of which generally a jury is to judge, yet here, as in the Ohio case of *Railway Co.* v. *Elliott*, 28 Ohio St. 340, where the plaintiff's evidence showed want of care, he can not recover. The plaintiff's stop seventy five yards from the track where he could not see it, considering the ground, his going straight without stop or listening, in forgetfulness, inattention, or carelessness, knowing well the dangerous character of the place, having his organs of sense unimpaired, and knowing that the train was due, was contributory negligence. "Forgetfulness of danger or absence of thought about the railroad is no excuse for a failure to look or listen." 2 Shear. & R. Neg. § 476.

On the one hand, it may be said that we may assume that warning, if given, would have been heard, and the disaster avoided; but, on the other, it may with equal force be said that, if the party had exercised reasonable care, it would also have been avoided. And so the want of care or negligence on the side of the individual and railroad would be balanced, and in this condition the plaintiff could not recover. *Railroad Co.* v. *Morris*, 31 Gratt. 200; *Railroad Co.* v. *Anderson*, Id. 814; *Railroad Co.* v. *Aspell*, 23 Pa. St. 149; *Railroad Co.* v. *Jones*, 95 U. S. 439.

I confess I am surprised to find the law on this subject as it is, and that, as an original question, I would have felt inclined to say that the omission of these statutory warnings would call for a recovery; that the statute designed them to arouse to caution and watchfulness those who, for the time, from the cares or griefs of life, are sunk in listless inattention, or even the careless and negligent; but the great current of authority does not justify this view. Perhaps, as the distinguished Judge SHARSWOOD says, a public policy,

designed to save the lives of the thousands who in these days travel on our railroads, has had a large share in so settling the law. We do not intend to impugn the general principle of *Nuzem* v. *Railroad Co.*, 30 W. Va. 228 (4 S. E. Rep. 242). We say that the omission of the signals or warnings required by the statute is negligence in a railroad company *prima facie*, entitling an injured party to recover, and he is not, after proving such negligence and his injury, called on to prove that he is not guilty of contributory negligence; but, when it appears from the evidence adduced by a plaintiff, or is satisfactorily shown by the defendant, that the plaintiff is guilty of contributory negligence, then it falls under the general principles of the law of contributory negligence above stated. So much for the motion to set aside the verdict as not sustained by the evidence.

The defendant, in its brief of counsel, maintains that it is aggrieved by the refusal to give its instruction numbered 6, reading as follows: "Defendant's instruction No. 6. The court instructs the jury as follows: To enable the plaintiff to recover, the jury must find from the evidence that the defendant negligently, with force and violence, drove its locomotive engine, without ringing its bell or blowing its steam-whistle for a sufficient time to give due notice to the said plaintiff of the approach of the said locomotive, upon and against the said plaintiff, and the horse and wagon which the said plaintiff was then and there driving along the public road, and over the public railroad crossing, and that, by means of such engine being so negligently driven, as aforesaid, against and upon the plaintiff, and his horse and wagon, the said horse was and became greatly frightened, and ran away with and overturned plaintiff's wagon, throwing him out and injuring him." The declaration alleged that the defendant "wrongfully, injuriously, unlawfully, and negligently, with great force and violence, and at a high rate of speed, drove its said locomotive engine, without ringing its said bell or whistling its said steam-whistle for a time sufficient to give due notice to the said plaintiff of the approach of the said engine, upon and against the said plaintiff, and the said horse and wagon

which the plaintiff was then and there lawfully driving upon and along the said public highway, and upon, over, and across said public crossing at grade, whereby said horse became greatly frightened, and ran away with, and overturned said wagon, and the plaintiff was suddenly, and with great force and violence, thrown from said wagon to the ground, and thereby sustained divers serious injuries," *etc.*

If this instruction, like Nos. 4 and 5 asked by the defendant, propounded the theory that, to enable the plaintiff to recover, the evidence must show that the engine actually struck the wagon or horse or man, actual physical contact, I think it would have been objectionable, for I understand the gist of the charge of the declaration not to be such contact, or merely such contact, but that, from running the locomotive rapidly and without signal, the horse became frightened and ran away, or, at most, that by running it under those circumstances against the wagon, the horse became frightened and ran away, the essence being that the horse was frightened thereby and ran away, and thereby injured plaintiff, the striking the wagon being less important, as only part of the cause of the origin of the injury. The causes inducing the fright of the horse are rapid running of train without signal, and its striking the wagon. Can it not be proven that the train was, without signal, run at high speed, very close to horse and wagon, though without actually striking them, thereby frightening the horse, without a variance? I think so. The word "upon" does not always, in legal or other phrase, import actual contact. Indictments for assault charge an assault upon one, but there is no actual battery. So the word "against," as sentences which the mind will suggest, and as the dictionary shows, does not always import physical contact; but, even if it ought to be so interpreted in this declaration, it is only a part of the means working a result, which result is the source of the injury. The case of *Hawker* v. *Railroad Co.*, 15 W. Va. 528, would not sustain the claim of variance here.

For these reasons, I think instructions Nos. 4 and 5 properly rejected; but instruction No. 6 is not open to that objection, because it does not only incorporate the running

of the locomotive upon and against the plaintiff and his horse and wagon, but proceeds to add the language : "And that, by means of such engine being so negligently driven, as aforesaid, against and upon the plaintiff and his horse and wagon, the said horse became and was greatly frightened, and ran away with and overturned the plaintiff's wagon, throwing him out and injuring him," thus attributing the injury to the same causes as the declaration itself does, covering the whole ground that it covers in that respect, using, if not its language, its substance. If the plaintiff in his declaration so assigned the cause of the injury, why may not the instruction of defendant adopt the same scope, and ask the court to tell the jury that the evidence must come up to the same standard ? Whether it was a variance or not, why could not defendant adopt it, and ask the court to say that the case must come up to the standard set by plaintiff in his declaration? The defence gave evidence tending to show that bell and whistle sounded warning, and that the engine was one hundred and sixteen yards from the plaintiff when first seen on the crossing, whipping and lashing his horse, and had passed fifty or sixty feet from the track when the engine reached it, and that his falling from the wagon was attributable to the whipping of the horse there, and for some distance after crossing, or bad driving, or rocks in the road, or that he drove over a bank, and that it came not from the cause imputed in the declaration, or that the horse was not frightened, but threw plaintiff out from speed caused by the whipping. Why had not the defence a right to an instruction, in view of this evidence, to the effect of No. 6, that the evidence for the plaintiff, to succeed, must prove the things in it suggested, being just what the declaration alleged ? We think instruction 6 was improperly rejected.

It may be proper to say that the judge did give instructions at the instance of the defence substantially embodying the law as to duty of travelers at a crossing, as above stated ; but it seems to me that the jury, viewing the case only on the plaintiff's evidence, departed from and disregarded such instructions.

The judgment is reversed, verdict set aside, new trial awarded, and cause remanded for such trial.

REVERSED.    REMANDED.