Decided 5 December; rehearing denied 19 December, 1898.

## BLACKBURN *v.* SOUTHERN PACIFIC COMPANY.

[55 Pac. 225.]

1. ACCIDENT AT CROSSING—NEGLIGENCE A COMPLETE DEFENSE.—There can be no recovery for the death of one who was struck by a railway train at a grade crossing, where the evidence showed that, though such train was moving at a rate of speed prohibited by law, the proximate cause of the accident was the negligence of the deceased in approaching such crossing without exercising due caution.

2. DUTY TO STOP AND LISTEN FOR TRAIN.—The failure of a person about to cross a railway track, on a highway at grade, to look and listen for an approaching train, or to stop for such purpose, where the view of the track is obstructed, or where there is noise which he may control, and which may prevent his hearing such train, is negligence *per se*, which will bar a recovery for an injury resulting from a collision with a train at such crossing: *Durbin* v. *Oregon Ry. & Nav. Co.*, 17 Or. 5, and *McBride* v. *Northern Pac. R. R. Co.*, 19 Or. 64, approved and followed.

3. DUTY OF COURT TO DIRECT A VERDICT.—In an action for injuries received by a traveler on the highway, at a railway crossing, it is the duty of the court to direct a verdict for defendant, where the uncontradicted evidence shows the omission of a duty which the law requires of such traveler: *Durbin* v. *Oregon Ry. & Nav. Co.*, 17 Or. 5, approved and followed.

From Clackamas :   THOS. A. McBRIDE, Judge.

Action by Sarah A. Blackburn against the Southern Pacific Company.   There was a verdict and judgment in favor of plaintiff, and defendant appeals.

REVERSED.

For appellant there was a brief over the name of *Bronaugh, McArthur, Fenton & Bronaugh*, with an oral argument by *Mr. William D. Fenton.*

For respondent there was a brief over the names of *C. D. & D. C. Latourette*, and *W. H. Dobyns*, with an oral argument by *Messrs. Dobyns* and *C. D. Latourette.*

MR. JUSTICE BEAN delivered the opinion.

This is an action to recover damages for the death of plaintiff's intestate, caused by a collision of the vehicle in which he was riding with one of defendant's trains at a street crossing in Oregon City. The ground of negligence charged in the complaint is that at the time of the collision the train was moving at a greater rate of speed than eight miles an hour, in violation of an ordinance of the city, and without ringing a bell, as required by such ordinance; and the defense is contributory negligence. Upon the issue joined, a trial was had, resulting in a verdict and judgment in favor of plaintiff for the sum of $2,000, and defendant appeals.

1. In answer to special interrogatories, the jury found that the speed of the train was from ten to twelve miles an hour, but that just before the accident the bell was being rung. The defendant's negligence in running its train at an unlawful rate of speed must therefore be regarded as an established fact, and the controlling question in the case is whether the court erred in overruling defendant's motion for a nonsuit, on the ground that the evidence showed that the proximate cause of the accident was the negligence of the deceased in approaching the crossing without exercising due caution; for, if such was the fact, the plaintiff cannot recover, notwithstanding the negligence of the defendant: *Schofield* v. *Chicago, etc. Ry. Co.*, 114 U. S. 615 (5 Sup. Ct. 1125); *Railroad Co.* v. *Houston*, 95 U. S. 697; *Chicago, etc. Ry. Co.* v. *Crisman*, 19 Colo. 30 (34 Pac. 286); *Hager* v. *Southern Pac. Co.*, 98 Cal. 309 (33 Pac. 119); *Gothard* v. *Alabama R. R. Co.*, 67 Ala. 114.

The defendant's track runs north and south through Oregon City, crossing Tenth Street at a slight deviation from a right angle one hundred and fifty feet east of the intersection of such street with Main Street. From Main Street, along Tenth to the railway track, the view

of an approaching train from either direction is com-
pletely obstructed by buildings, except that on the north
side, at a point fifty-seven feet from the track, a train
can be seen through an opening two feet wide when one
hundred and thirty-seven feet from the crossing; and
there is also a space of about fifteen feet on the same
side, between the track and the nearest building, through
which the defendant claims a view of the track can be
had, looking north, of from ninety to one hundred and
fifty-seven feet, accordingly as one approaches it, but
the plaintiff contends that the view through this space
is obstructed by brush and trees.    About 11 o'clock on
the morning of July 18, 1895, the deceased and his son,
a lad sixteen or seventeen years of age, who were return-
ing home from Oregon City, came down Main Street
in an ordinary two-seated farm wagon, drawn by two
horses, turned into Tenth, and, without stopping to look
or listen for an approaching train, attempted to cross
the track, when the wagon was struck by a train com-
ing from the north, and the plaintiff's intestate killed.
The evidence for the plaintiff tended to show that, at the
time the deceased and his son turned into Tenth Street,
the horses were traveling in a trot, but soon thereafter,
the deceased having cautioned his son, who was driving,
to look out for the cars, the latter checked them up to a
walk when about halfway between Main Street and the
crossing, and they continued in that gait until the acci-
dent; that, as they passed along the street, both the de-
ceased and his son looked through the opening on the
north, between the buildings referred to, and listened
for an approaching train, but did not see or hear it until
it struck the near horse; that they were both familiar
with the crossing, and saw the sign there, "Look out for
the cars!" and were expecting a train about that time;

but it is in proof, and it is admitted, that they did not stop their.team to look or listen after turning into Tenth Street.

Upon these facts, the question is presented whether the deceased, in approaching the crossing, acted with that ordinary care and circumspection which the law requires of a traveler on the highway who is about to cross a railroad track. In ordinary actions, grounded upon negligence, and in which contributory negligence is available as a defense, the general rule is that the plaintiff's conduct is to be measured by that of an ordinarily prudent and cautious person under the same circumstances, and the qustion is one of fact for the jury. But, in view of the importance of railway traffic, the character and momentum of trains, and their confinement to a single track, the danger from a collision at a crossing, not only to the traveler on the highway, but to the passengers on board the train, is such that the courts have been compelled to proceed beyond the rule which ordinarily prevails, and prescribe, as a matter of law, the *quantum* of care required of a traveler about to cross a railway track. "The requirements of the law, moreover," says Mr. Beach, "proceed beyond the featureless generality that one must do his duty in this respect, or must exercise ordinary care under the circumstances. The law defines precisely what the term 'ordinary care under the circumstances' shall mean in these cases. In the progress of the law in this behalf, the question of care at railway crossings as affecting the traveler is no longer, as a rule, a question for the jury. The *quantum* of care is exactly prescribed as matter of law. In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track. A multitude of decisions of all the courts enforce this reasonable rule. It is also so consonant with right reason and the dictates

of ordinary prudence, and so much in line with the ordinary care which the average of mankind display in the daily routine of life, that it should seem to be scarcely dependent upon the authority of decided cases in the law courts.   The traveler on the highway must even come to a halt for this purpose ; but he is not required to get out of his wagon, and go forward on foot, for the purpose of looking, especially when such a course would not have prevented the collision, but would rather have exposed the traveler to the very peril it was designed to avoid :'' Beach, Contrib. Neg. (2 ed.), §§ 180, 181.

2.   In harmony with this rule, it is a principle of law, firmly established in this state as elsewhere, that the failure of a person about to cross a railway track on a highway, at grade, to look and listen for an approaching train is negligence *per se*, and will bar a recovery for an injury received by a collision with a train at the crossing : `Durbin` v. *Oregon Ry. & Nav. Co.*, 17 Or. 5 (11 Am. St. Rep. 778, 17 Pac. 5); *McBride* v. *Northern Pac. R. R. Co.*, 19 Or. 64 (23 Pac. 814).

In Pennsylvania and many other states the rule is pressed further, and it is the imperative duty of the party in all cases, not only to look and listen, but to stop for that purpose at a convenient distance from the track before attempting to go upon it ; and, if he suffers injury from a collision with the train, his conduct in failing to stop is negligence *per se*, and must be so declared by the court : Bailey, Confl. Jud. Dec., p. 263 ; *Pennsylvania R. R. Co.* v. *Beale*, 73 Pa. St. 504 (13 Am. Rep. 753); *Ehrisman* v. *East Harrisburg Ry. Co.*, 150 Pa. St. 180 (17 L. R. A. 448, 24 Atl. 596); *Aiken* v. *Pennsylvania R. R. Co.*, 130 Pa. St. 380 (18 Atl. 619, 17 Am. St. Rep. 775). "There never was a more important principle settled," says Mr. Justice SHARSWOOD, in *Pennsylvania R. R. Co.* v. *Beale*, 73 Pa. St. 504 (13 Am. Rep. 753), "than that the

fact of the failure to stop immediately before crossing a railroad track, is not merely evidence of negligence for the jury, but negligence *per se*, and a question for the court. It was important, not so much to railroad companies, as to the traveling public. Collisions of this character have often resulted in the loss of hundreds of valuable lives of passengers on trains ; and they will do so again, if travelers crossing railroads are not taught their simple duty, not to themselves only, but to others. The error of submitting the question to the jury whether, if the deceased had stopped, he could have seen or heard the approaching train, runs through the entire charge and answers of the learned judge below. He should, upon the uncontradicted evidence, have directed a verdict for the defendants.'' This rule is simple, affords an ·unvarying standard by which the *quantum* of care required of the traveler can be determined, and, if observed, accidents at crossings would unquestionably rarely occur. But, while there is much force in the argument of Mr. Justice SHARSWOOD in the case referred to, that ''the fact of collision shows the necessity there was of stopping'' even in cases where the view of the track is unobstructed, it is probable the doctrine having the most support in the decided cases is that it cannot be affirmed as a matter of law, in all cases, that there is a duty on the traveler to stop before attempting to cross : 7 Am. & Eng. Enc. Law (2 ed.), 430. If the view is unobstructed, so that he can see an approaching train before it reaches the crossing, he has no occasion to listen, and hence it is said there is no reason why he should stop for that purpose ; but if the view is obstructed, so that he cannot use the sense of sight, it then becomes his duty to listen, and to listen carefully and attentively ; and if there is any noise or confusion over which he has control, either from the vehicle in which he is traveling, or

otherwise, which may interfere with the sense of hearing, the authorities are quite agreed that it is his duty, as a matter of law, to stop such noise, and listen for a train, before going upon the track, because he cannot listen carefully without doing so.

Judge Elliott, in his recent work on Railroads, says that "ordinary care often requires that the traveler should stop, look, and listen for moving trains, from a place where danger can be discerned and precaution taken to avert it. If, for instance, the noise is so great that an approaching train cannot be heard, or the obstructions such that it cannot be seen, then the traveler must come to a halt, and look, and listen. It cannot be said that one who simply looks and listens where such acts are fruitless and unavailing exercises that degree of care which the law requires. While it cannot be justly affirmed, as we believe, as a matter of law, that there is a duty to stop in all cases, yet there are cases where the failure to stop must be deemed such a breach of duty as will defeat a recovery by the plaintiff. There are very many cases holding that the surroundings may be such as to impose upon the traveler the duty of stopping, looking, and listening, and these cases, as we think, assert the true doctrine. Some of the courts, in well-reasoned cases, press the rule further, and hold that the traveler must, in all cases, stop, look, and listen. As we have said, we do not think that it can justly be affirmed, as matter of law, that there is a duty to stop in all cases; but we do think that the duty exists in cases where there is an obstruction to sight or hearing, and that where the surroundings are such that but one conclusion can be reasonably drawn, and that conclusion is that it is negligence to proceed without halting, the court should without hesitation direct a verdict if no halt is made." Section 1167. "The rule is now firmly established in

this state, as it is elsewhere,'' says Mr. Chief Justice ALVEY, in *Philadelphia Railroad Co.* v. *Hogeland*, 66 Md. 149, 161 (7 Atl. 107, 59 Am. Rep. 159), '' that it is negligence *per se* for any person to attempt to cross tracks of a railroad without first looking and listening for approaching trains ; and, if the track in both directions is not fully in view in the immediate approach to the point of intersection of the roads, due care would require that the party wishing to cross the railroad track should stop, look, and listen, before attempting to cross.  Especially is this required where a party is approaching such crossing in a vehicle, the noise from which may prevent the approach of a train being heard.  And if a party neglects these necessary precautions, and receives injury by collision with a passing train which might have been seen if he had looked, or heard if he had listened, he will be presumed to have contributed by his own negligence to the occurrence of the accident ; and, unless such presumption be repelled, he will not be entitled to recover for any injury he may have sustained.  This is the established rule, and it is one that the courts ought not to relax, as its enforcement is necessary as well for the safety of those who travel in railroad trains as those who travel on the common highways.''

And in *Chase* v. *Maine Cent. R. R.*, 167 Mass. 383 (45 N. E. 911), it is said to be a general, although not a universal, rule, ''that, if there is anything to obstruct the view of a traveler on the highway at a crossing at grade, it is his duty to stop until he can ascertain whether he can cross with safety.''  To the same effect, see Patterson, Ry. Acc. Law, § 177 ;  Field, Dam. § 175 ;  *East Tenn. Ry. Co.* v. *Kornegay*, 92 Ala. 228 (9 South. 557);  *Gothard* v. *Ala. etc. R. R. Co.*, 67 Ala. 114 ;  *Chicago, etc. Ry. Co.* v. *Crisman*, 19 Colo. 30 (34 Pac. 286);  *Cin. Ry. Co.* v. *Duncan*, 143 Ind. 524 (42 N. E. 37);  *Cin. Ry. Co.* v. *How-*

*ard*, 124 Ind. 280 (8 L. R. A. 593, 19 Am. St. Rep. 96, 24 N. E. 892); *Jensen* v. *Mich. Cent. R. R. Co.*, 102 Mich. 176 (60 N. W. 57); *Lake Shore R. R. Co.* v. *Miller*, 25 Mich. 274; *Haas* v. *Grand Rapids R. R. Co.*, 47 Mich. 401 (11 N. W. 216); *Banning* v. *Chicago, etc. Ry. Co.*, 89 Iowa, 74 (56 N. W. 277); *Louisville, etc. Ry. Co.* v. *Stommel*, 126 Ind. 35 (25 N. E. 863); *Littaur* v. *Narragansett R. R. Co.*, 61 Fed. 591; *Merkle* v. *New York, etc. R. R. Co.*, 49 N. J. Law, 473 (9 Atl. 680); *Seefeld* v. *Chicago, etc. R. R. Co.*, 70 Wis. 216 (5 Am. St. Rep. 168, 35 N. W. 278); *Stepp* v. *Chicago, etc. Ry. Co.*, 85 Mo. 229; *Central R. R. Co.* v. *Smalley*, (N. J. Law) 39 Atl. 695; *Chase* v. *Maine Cent. R. R. Co.*, 78 Me. 346 (5 Atl. 771); *Flemming* v. *Western, etc. R. R. Co.*, 49 Cal. 253; *Shufelt* v. *Flint, etc. R. R. Co.*, 96 Mich. 327 (55 N. W. 1013); *Houghton* v. *Chicago, etc. Ry. Co.*, 99 Mich. 308 (58 N. W. 314); *Henze* v. *St. Louis, etc. Ry. Co.*, 71 Mo. 636; *Beyel* v. *Newport, etc. R. R. Co.*, 34 W. Va. 538 (12 S. E. 532, 45 Am. & Eng. Ry. Cas. 188).

In *Central R. R. Co.* v. *Smalley*, (N. J. L.) 39 Atl. 695, the plaintiff drove, by daylight, slowly along a highway, towards a railroad crossing, looking and listening for approaching trains. His view of trains that might come from the west was cut off, notwithstanding which he drove, without stopping, upon the track; and his horse was killed, his sleigh demolished, and himself injured by the engine of a train which, until it was upon him, he could not see, by reason of the obstruction, and did not hear. I was held that it was error in the trial judge to deny the motion for a nonsuit for contributory negligence. So, also, in *Chase* v. *Maine Central R. R. Co.*, 78 Me. 346 (5 Atl. 771), the evidence showed that the crossing, where the deceased was injured was at the north end of a cut, and, between the cut and the highway upon which he was traveling, high land and other obstacles

intervened which obstructed his view of the train coming from the south, for a considerable distance before reaching the crossing. This, the court said, made it his duty to listen, and to listen carefully and attentively. To do this, if riding in a sleigh, and especially in a sleigh with bells attached, it would be necessary to stop his horse ; for, surely, he could not listen carefully and effectually without stopping his horse, and thus stilling the noise of his own team. And, because the conduct of the deceased did not come up to this standard, it was held that he was guilty of contributory negligence such as would bar a recovery. In *Flemming* v. *Western, etc. R. R. Co.*, 49 Cal. 253, the plaintiff was driving a four-horse team towards a railroad crossing. The air was so filled with dust that he could not see the railroad, and his wagon made some noise. He attempted to cross the track without stopping to listen for an approaching train, and his horses were killed by the engine. It was held that he was guilty of contributory negligence, and could not recover, the court saying : "As the plaintiff could not have used his eyes with effect, it was incumbent on him, as a person of ordinary prudence, to make the best use of his ears, which he could not do while his team was in motion. Upon the plaintiff's statement of the facts, we hold that he was guilty of contributory negligence in failing to stop his team to listen for an approaching train." In *Shufelt* v. *Flint, etc. Ry. Co.*, 96 Mich. 327 (55 N. W. 1013), the plaintiff's wife approached a railroad crossing upon a highway, in a lumber wagon drawn by two horses. A bank and woodpile obstructed the view of the track as she approached, until she reached a point eighteen feet from the crossing. She was driving in a slow walk, but did not stop to look or listen for an approaching train. When the horses' feet were between the rails, she saw the train, and tried to turn

them off the track, but was struck by the engine, and injured. It was held that she was guilty of such contributory negligence as would prevent a recovery, the court saying that trains must run where the view is obstructed by cuts, embankments, trees and other things, and he who does not choose to stop and listen when he cannot see must suffer the consequences of his own negligence.

Again, in *Houghton* v. *Chicago, etc. Ry. Co.* 99 Mich. 308 (58 N. W. 314), the plaintiff, who was returning home from his market town, riding on two boards laid upon his wagon, accompanied by his boy, approached a crossing on defendant's road at a point where his view of the track was obstructed for one hundred and ninety-six feet from the crossing, knowing that a fast train was due about that time. He watched for the train, and listened, as did also the boy, but did not stop his team for that purpose at any point. The ground was frozen, and the wagon made some noise. As his horses stepped upon the track, he noticed the light upon them, and whipped them up, but was struck and severely injured before he got across ; and it was held that his attempt to cross the track without stopping to listen for an approaching train was contributory negligence, preventing a recovery, notwithstanding the fact that other teams had immediately preceded him across the track in safety. And so, also, in *Henze* v. *St. Louis, etc. Ry. Co.*, 71 Mo. 636, the testimony of plaintiff's witnesses showed that the deceased, with his infant son, was driving in a two-horse wagon, at a slow walk, along a highway where it crossed the railroad, when they were run over and killed by a train, which was an extra, and not running on time. The witnesses were not agreed as to whether the deceased could have seen the train as he approached the crossing ;

but the testimony showed that, while no bell was rung or whistle sounded, the train made plenty of noise, and he could have heard it if he had stopped and listened; that he did not stop to look or listen, or take any other precaution to avoid the danger; and it was held that a demurrer to the evidence was well taken, and should have been sustained, the court saying that, "if Henze had used the precaution which common prudence dictates, it is not likely that the calamity would have occurred. If he had stopped to look and listen when near the track, and could neither see nor hear the approaching train, on account of the cut or other obstructions, and no signal was given from the train, he would have been justifiable in attempting to cross, and no negligence would have been imputable to him. But he had no right to drive along over a dry, hard road in a two-horse wagon, the noise of which might prevent him from hearing an approaching train, and, without stopping an instant to see or hear, go upon the railroad track, except at his own peril."

Now, applying the doctrine of the authorities to the case at bar, the conclusion is irresistible that the deceased did not exercise such care and prudence as the law requires in approaching the track to ascertain whether he could cross in safety. He was familiar with the crossing, and knew that it was a blind and dangerous one. His view of an approaching train from the south was completely obstructed, and on the north substantially so. It is obvious, from the entire surroundings, that he could not safely depend upon his eyes to ascertain whether a train was approaching from either direction. It was, therefore, incumbent upon him to listen, and listen attentively, and as the noise of his wagon passing over a hard, dry, and more or less rocky street, would interfere with the sense of hearing, ordinary care required that he stop the

noise by stopping the wagon when he was near enough to the track to determine by listening whether there was danger or not. It is true the evidence indicates that his team was brought to a walk; but, notwithstanding this, the noise from the wagon and horses' feet was necessarily sufficient to seriously interfere with the effective use of the sense of hearing. If they had been brought to a full stop, there would have been no disturbing sound which the plaintiff could control; and, under the circumstances, we think he was bound to exhaust this source of information. The whistle on the train was sounded at the whistling station north of the crossing, and the bell was rung just prior to the accident. The train was proceeding at the rate of ten or twelve miles per hour, and he was driving at the rate of three or four. They met at the crossing. It seems clear, therefore, that they were so near to each other at any time while the deceased was within one hundred feet of the crossing that, if he had stopped his wagon and listened, he would have heard the approaching train. Having neglected this method of informing himself, he failed, in our opinion, to use due diligence under the circumstances, and the motion for a nonsuit should have been allowed.

3. It is unquestioned that negligence is generally a question of fact for the jury; but in actions for injuries at railway crossings, where, as in this case, the uncontradicted evidence shows the omission of a duty which the law requires of the traveler, it is the duty of the court to direct a verdict for the defendant: *Durbin* v. *Or. Ry. & Nav. Co.*, 17 Or. 5 (11 Am. St. Rep. 778, 17 Pac. 5); Elliott, Railroads, § 1179. The judgment will, therefore, be reversed, and it is so ordered.

REVERSED.