Jenkins vs. The Chicago, Milwaukee & St. Paul Railway Company.

---

JENKINS vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

RAILROADS: NEGLIGENCE. *When company not chargeable with knowledge of facts known to one of its conductors.*

The owner of certain horses and goods destined for the village of L., shipped them in a common box stock car of the defendant, which was to be run on defendant's road to A., and thence on its branch road to L.; and plaintiff, who was employed by the owner to accompany him and aid in taking care of the property, rode with it in said box car to A., with the knowledge and consent of the conductor who ran the train to that point. Such conductor in fact received fare for plaintiff's ride from A. to L. (which was not in his run), though he had no authority to do so. Some hours after the arrival of said car at A., when the train of which it was then a part was about starting for L., plaintiff went into said car without the knowledge or consent of the conductor or other persons in charge of that train, and without doing anything to bring the fact to their attention before the accident complained of. Before the train started, the car was locked by one of defendant's employees; and afterwards, while in motion, goods therein took fire through defendant's alleged negligence, and plaintiff was injured before he could procure the door to be opened. *Held*, that defendant was not chargeable with notice of plaintiff's presence in the box car between A. and L. merely by reason of the knowledge possessed by the first conductor.

Jenkins vs. The Chicago, Milwaukee & St. Paul Railway Company.

APPEAL from the Circuit Court for *Dane* County.

In March, 1873, one Nye made an agreement with the defendant company for the transportation by it, over its road and in its cars, of certain horses and household goods, from Castalia, in the state of Iowa, to Lyle, in the state of Minnesota, both the places named being stations on defendant's road. The horses and goods were accordingly received into what is known as a box freight car. Nye accompanied the property, riding in the caboose of the train; and plaintiff, who was in Nye's employ, rode in the box car with the horses and goods. The main line of defendant's road runs from Castalia northwesterly through Austin to St. Paul, Minn.; but from Austin, a branch line extends southerly through Lyle. At Austin, the car in question was detached from the train, at night; and was put into a new train, made up at that point, which was run to Lyle the next morning. At Austin, Nye and the plaintiff stayed at a hotel over night. Before their train started for Lyle the next morning, plaintiff again took his place in the box car, Nye again riding in the caboose. Just before the train started, the door of the box car was closed and locked by an employee of the company. In consequence of a defect in the car, sparks from the locomotive entered the end of it adjoining the tender, and set fire to straw and goods therein; and before plaintiff could procure the door to be unlocked, so as to escape from the car, he received severe and permanent injuries, for which he seeks to recover in this action. He alleges that the defendant agreed to carry him in said car as a passenger, and received full fare for his transportation as such, from Castalia to Lyle; and that defendant was negligent in loading the goods in a defective car, placing the defective end of such car near the engine, and failing to properly guard it against exposure to fire; and also in locking the door of the car so as to prevent plaintiff's escape therefrom. The answer denies these allegations.

The conductor of the train to which the car in question was

attached between Castalia and Austin, was one Hopkins, to whom, plaintiff claims, Nye paid full fare for the carriage of plaintiff from Castalia to Lyle. The train to which said car was attached from Austin to Lyle, was run by a different conductor. The jury found specially, upon questions submitted to them by the court, that Hopkins received fare for the plaintiff from Castalia to Lyle, but had no authority from the company " to collect fare or make an arrangement for carrying persons from Austin to Lyle," as his run did not extend over that division of the road; that neither the conductor nor any of those in charge of the train from Austin to Lyle, knew or had good reason to believe, before the accident, that plaintiff was in said box car; that neither the plaintiff nor any one for him did anything to apprise said conductor, or any one of those in charge of the train, that he had entered that car or was riding therein; and that plaintiff knew of the opening in the defective end of the car, and the nearness of combustible material thereto, before starting from Austin to Lyle.

The instructions given by the court are sufficiently stated in the opinion. Plaintiff had a verdict for $1,500; a motion by defendant, upon the minutes of the court and the findings of the jury, for a judgment in its favor, notwithstanding the general verdict, was denied; and from a judgment in accordance with the general verdict, the defendant appealed.

Briefs were filed for the appellant, signed respectively by *John W. Cary* and *Gregory & Pinney*. The brief for the respondent is signed by *Vilas & Bryant*. The cause was argued orally by *Mr. Cary* and *Mr. Pinney* for the appellant, and by *Mr. Vilas* for the respondent.

For the appellant it was contended, in substance, that it appeared from the facts specially found, that plaintiff was, and defendant was not, guilty of negligence contributing to the injury. 2. That plaintiff had none of the rights of a passenger. (1) Because the train was a freight train, and the conductor had no right to carry passengers except on stock

contracts (upon which only one person, whose name was endorsed on the contract — in this case, Mr. Nye, — could be so carried), and had no right to collect fare. *Lucas v. Railway Co.*, 33 Wis., 41, 55, 56, 60; *Murch v. R. R. Co.*, 9 Fost., 9; *Elkins v. R. R. Co.*, 3 id., 275; 10 Am. Law Reg., 624–5; *Shoemaker v. Kingsbury*, 12 Wall., 369; *Eaton v. R. R. Co.*, 57 N. Y., 382. (2) Because Hopkins had no authority, either real or apparent, to collect fare from Austin to Lyle. 1 Parsons on Con., 41–46, and cases there cited; Story on Agency, § 133; 1 Pet., 290; *Mechanics' Bank v. R. R. Co.*, 13 N. Y., 632, 637; *Johnson v. R. R. Co.*, 46 N. H., 213, 221; *Jeffersonville R. R. Co. v. Rogers*, 38 Ind., 126; *Grant v. Norway*, 70 E. C. L., 664, 687; *Coleman v. Riches*, 81 id., 104, 117. Even a regular passenger conductor is an agent of the company to receive fare only to the extent of his run. If a passenger pays fare beyond that, the company may be liable to refund the money, but the passenger has no right to the additional ride on account of such payment. The next conductor would neither be bound nor have a right to recognize such payment. It is not pretended that Hopkins gave plaintiff any ticket or other evidence that he had paid his fare; and without this he was not entitled to ride over another conductor's division of the road. *Townsend v. Railroad Co.*, 56 N. Y., 295; *C., C. & C. R. R. Co. v. Bartram*, 11 Ohio St., 457; *Wakefield v. South B. R. R.*, 117 Mass., 544. 3. That the court erred in charging that defendant was bound to take notice of plaintiff's presence in the car between Austin and Lyle, by reason of what had occurred between plaintiff and Hopkins. *Adams' Exp. Co. v. Trego*, 35 Md., 47, 66–69; *Fulton Bank v. Canal Co.*, 4 Paige, 127, 136–7; 24 Wis., 157–160; Story on Agency, § 140 c.

For the respondent it was argued, that it clearly appeared from the evidence that the train carried passengers, and the conductor was authorized to receive them and to collect fares in money; that he did receive plaintiff's fare through to Lyle,

without knowledge on the part of the plaintiff or Nye, or no-
tice by the conductor to either, that he had no authority to
· receive it so far, or that he was not to conduct the train so
far, or that there was to be any change of train or train offi-
cers before reaching that town.   The company cannot relieve
itself from the obligations imposed by the acts of its agent in
the course of his employment, for which he had *apparent* au-
thority, by disclosing on the trial the secret instructions which
show that as to a small part of what he did, he had no *real*
authority.   *Lucas v. Railway Co.*, 33 Wis., 41.   The criti-
cisms of DIXON, C. J., upon the decision just cited, whether
just or not in that case, have no application here.   See also
*Dunn v. The Grand Trunk R'y Co.*, 58 Me., 187; *Penn. R. R.
Co. v. McCloskey*, 23 Pa. St., 526; *L. & U. M. R. R. Co. v.
Montgomery*, 7 Ind., 474.   The neglect of conductor Hopkins to
give plaintiff some ticket or token as evidence of his right to be
, carried to Lyle, could not affect defendant's obligation to carry
him to that place.   Besides, there is no proof of any rule or
usage of the company requiring passengers to carry any evi-
dence of the payment of fare; and the court cannot take
judicial notice of the company's regulations.   See *Edgerton
v. R. R. Co.*, 39 N. Y., 227.   2. If the conductor Hopkins,
acting so as to bind the company, had agreed that plaintiff
·should ride in that car to his destination, and knew that such
was his purpose, plaintiff was under no obligation to serve
any other notice upon the company of that fact, but might
rightfully continue in the car, in the absence of any contrary
direction from the company's agents.   The instructions of the
court upon that subject are correct, unless it be true that a
passenger who has acquired the right to ride in a through car
from one place to another, is bound to give notice to the em-
ployees of each train to which the car may be attached in the
course of his journey, before he can rightfully retake or con-
tinue to occupy his seat.   The question is one of negligence;
and manifestly it cannot be imputed to the plaintiff as a fault,

that he took the car for a distance of twelve miles, which the conductor had permitted him to occupy during the entire day preceding; especially when he was there to carry out the obligation, which the railroad company by its written contract had imposed on his employer, that the horses should be " fed and *taken care of* by the owner." *Penn. R. R. Co. v. McCloskey, supra.*

COLE, J. Many of the important questions in this case relating to the rights of passengers, and the duties and obligations of railroad companies in respect to them, we shall not attempt to decide on this appeal, although they were elaborately discussed at the bar. Our decision must go upon rather narrow grounds, and rest upon the facts of this case. A number of instructions asked on the part of the defendant, and bearing upon the general questions of the rights of passengers and duties of carriers, were given by the circuit court. One vital question in the case was, whether, in view of the facts disclosed on the trial, the relation of passenger and carrier existed at the time of the injury. The circuit court charged that, although the plaintiff was on the train and suffered the injury complained of, yet he could not recover unless this relation existed. Further, at the request of the defendant, the court charged in substance, that the law was, that a person, by the act of getting upon or into a train of cars in which passengers are usually or ordinarily carried, as in a regular passenger car in a passenger train, became entitled to the rights of a passenger, subject to the payment of his fare; and that the same rule applied to a person getting into a caboose upon a freight train in which passengers were ordinarily carried. The jury were also told that a person's getting in a box or freight car adapted to or being used for the transportation of freight only, without the knowledge or consent of the conductor or servants in charge of the train, would not have that effect, nor would it make such person a passenger

on the train so that the company would owe him any duty or be under any obligations to him as such. Then, in respect to the payment of fare, the court submitted the question to the jury, whether the plaintiff's fare was paid through from Castalia to Lyle with the knowledge on the part of Hopkins that the plaintiff was riding in the car with the horses and expected to go through to his destination, and without any knowledge on the part of the plaintiff or of Mr. Nye that Hopkins, the conductor, was violating any of the rules of the company, if any were in fact violated by what was done. In the special verdict, the jury found that Hopkins, the conductor from Castalia to Austin, did receive the fare for the plaintiff to Lyle; and therefore this must be deemed a fact established in the case. But it was claimed on the trial in the court below, and the point is insisted upon here, that Hopkins had no authority in fact from the company to collect fare or make any arrangement for carrying persons from Austin to Lyle over a different division or portion of road from that over which his run extended; and the jury found that he had no such authority, and had no right to collect or receive fare for carrying persons from Austin to Lyle. But the court held that it would make no difference whether or not the conductor had authority to receive fare for carrying persons beyond his run, provided neither the plaintiff nor Nye knew, when the fare was paid, that the conductor was violating the rules of the company by receiving it. But, assuming, for the purposes of this case, that the defendant would be bound by the receipt of the fare by Hopkins for the entire route, still the further question arises, Was the court right in its ruling in respect to notice that plaintiff was in the box car, and as to his duty to bring that fact to the attention of the conductor of the train on which he was injured?

The jury found that neither the conductor nor any person in charge of the train from Austin to Lyle, before the accident, knew or had reason to believe that the plaintiff was in

the box car; and that the plaintiff did not, nor did any one for him, do anything to apprise the conductor or those in charge of that train, that he had entered that car or was riding therein.   The uncontradicted evidence shows that the conductor, Hopkins, found the plaintiff in the box car with the horses when he collected fare at least to Austin, and left the plaintiff in that car until the train arrived at Austin.   And the fact is indisputable, that the plaintiff, the next morning, at Austin, went into the box car where the horses were, without the knowledge or consent of the conductor or those in charge of the train to Lyle, and did nothing to bring that fact to their attention before the fire was discovered.   As bearing upon these facts, the court was requested to instruct the jury that if they found from the evidence that the train from Austin to Lyle was made up of ordinary box or freight cars, with a caboose attached in which persons passing on the trains rode, and also found that the plaintiff went into the freight or box car without the knowledge or consent of the conductor or those in charge of the train from Austin to Lyle, and did nothing to bring that fact to their attention before the accident occurred, and they had no good reason to suppose he was in that car, then he did not, by so getting into that car, become a passenger on that train so as to make the defendant responsible for his safety; and whether he had or had not the right to ride over the road from Austin to Lyle on that or any other train, would make no difference; even had he purchased a ticket from Austin to Lyle and so conducted himself, it would make no difference; for in such a case there could be no recovery.   The court refused to give this instruction, but did charge that if the plaintiff's fare was paid while he was in the car with the horses, with the understanding upon the part of the conductor that he was taking care of the horses and was to take charge of them and ride in the car through to Lyle, and with no knowledge upon the plaintiff's or Mr. Nye's part that the conductor was acting without au-

thority and violating the rules of the company, then the company was chargeable with notice of his presence in the car until it arrived at its destination; and that his rights were the rights of a passenger thereon to the end of his journey. The substance of this ruling of the court was, that if Hopkins, when he collected the plaintiff's fare to the end of his journey, knew that he was in the box car for the purpose of taking care of the horses, the next conductor was chargeable with knowledge of the same facts, and was bound to take proper precautions for his safety as a passenger while in that car, though he actually had no notice that the plaintiff was in the car, and the plaintiff did nothing to apprise him, or those in charge of the train, that he had entered that car or was riding therein. It was claimed that the second conductor and train men were guilty of negligence in closing the door of this box-car in the usual manner, and in placing the car next to the locomotive. It will be borne in mind that the car was the common box or stock car, and was dropped out of the train it was in when it reached Austin. On the next morning, the car was placed in another train made up at Austin, which ran south to Lyle over another division of the defendant's road. A new conductor and a new set of train men took charge of the train. The goods in this car took fire before reaching Lyle, and the fire was not discovered until the plaintiff was nearly suffocated. Mr. Nye, whose name was written upon the contract as the person in charge of the horses, was riding in the caboose, and said nothing to the conductor about the plaintiff being in the box-car. Indeed, the conductor had no reason to suppose that there was any one in the car with the horses, and it would probably have been negligence to have started the train without fastening the door in the usual manner if no one had been in the car. *Betts et al. v. Farmers' Loan and Trust Co.*, 21 Wis., 81. The plaintiff saw fit to go into this car used only for the transportation of stock and freight, where passengers seldom or never ride except for special reasons, and

where the conductor would not think of looking for any one; and this the plaintiff did without the knowledge or consent of the persons in charge of the train. He strangely did nothing and said nothing to indicate his presence in that car when the employees of the company came to fasten the door. It seems to us it was his duty then to notify the train men where he was, in order that they might leave the door of the car unfastened, or use proper means for his personal safety. A distinction should be made between the case of a passenger paying his fare who secretly gets into a box car, and one getting into a car where passengers are ordinarily carried. In the former case, the passenger assumes the risk of riding upon such a car, and it is unreasonable to hold the carrier to the same rule of liability in respect to him that would attach if he were riding in a passenger car. As a general rule the soundness of this view would probably not be questioned. Does, then, the fact that conductor Hopkins knew that the plaintiff rode in the box car with the horses the entire preceding day, affect the question, or relieve the plaintiff from the duty of notifying the conductor, or persons in charge of the train from Austin to Lyle, that he had entered that car or was riding therein? It seems to us it does not. We think, under the circumstances, it was the plaintiff's duty to have apprised the second conductor or train men that he was in the car, and thus prevented the closing of the door. What reason is there for charging the conductor of a different train with the knowledge of Hopkins, that on the day before plaintiff rode in this car? The plaintiff was not obliged to ride in that car, but might at any time have taken the passenger caboose. But because he took that car in the first place, and because Hopkins, who received the fare, knew he was in the car taking care of the horses, the court charged that the company was chargeable with notice of his presence in the car until it arrived at its destination. This charge has a direct bearing upon the act of negligence in closing the door of the

freight car, which was relied on as one ground of recovery. We think it was erroneous when applied to the undisputed facts of the case, and that it was prejudicial to the rights of the defendant. So, without passing upon the other questions discussed by counsel, we grant a new trial for this error in the charge.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.