HAHN, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*December 3 — December 16, 1890.*

*Railroads: Collision at highway crossing: Contributory negligence: Inconsistent findings: Court and jury.*

1. In an action against a railway company for personal injuries received in a collision at a highway crossing, the jury found specially that the whistle of the defendant's engine was sounded at the whistling-post (about half a mile from the crossing); that the bell was rung continuously from that place to the crossing; that the engine was going forty-five miles an hour; that the plaintiff was driving three and one half miles an hour; that an engine could be seen when 2,600 feet distant from the crossing, from any point on the highway between 200 and 100 feet from the crossing; and that from a point twenty feet from the crossing an engine could be seen when 800 feet away. *Held*, that these findings were not inconsistent with a further finding that the plaintiff was not guilty of any contributory negligence.

Hahn vs. The Chicago, Milwaukee & St. Paul R. Co.

2. Upon the evidence in the case — tending to prove the facts thus specially found and, among other things, that the plaintiff and the engine were going in nearly the same direction, the highway making an angle of 30° with the railroad at the crossing; that the accident occurred on Sunday, when no train was due; that the plaintiff and her sister, who was riding with her, looked along the track when they were 200 feet from the crossing, again when they were 100 feet away, and once afterwards, but saw nothing; that they first saw or heard the engine when it gave an alarm about 400 feet from the crossing, and when it was too late to avoid the collision; and that from a point on the highway seventy or eighty feet from the crossing, to a point within a few feet thereof, the view of an approaching engine would be shut out by a water tank,— it is *held* that the question of contributory negligence was properly left to the jury.

APPEAL from the Circuit Court for *Waukesha* County. The facts are stated in the opinion.

For the appellant there was a brief by *John T. Fish*, attorney, and *Burton Hanson*, of counsel, and oral argument by *Mr. Hanson*. To the point that where the view was unobstructed the testimony of a party that he looked and did not see an engine does not raise a conflict, for it cannot in the nature of things be true, they cited *Scofield v. C., M. & St. P. R. Co.* 2 McCrary, 268; *Artz v. C., R. I. & P. R. Co.* 34 Iowa, 153; *Bloomfield v. B. & W. R. Co.* 74 id. 607; *Penn. R. Co. v. Bell,* 122 Pa. St. 58; *Morgan v. C. & A. R. Co.* 16 Atl. Rep. (Pa.), 353; *Tollman v. S. B. & N. Y. R. Co.* 98 N. Y. 198; *Pence v. C., R. I. & P. R. Co.* 63 Iowa, 752; *Payne v. C., R. I. & P. R. Co.* 39 id. 526; *Wilcox v. R., W. & O. R. Co.* 39 N. Y. 358; *Woodard v. N. Y., L. E. & W. R. Co.* 106 id. 369; *Weyl v. C., M. & St. P. R. Co.* 40 Minn. 350.

For the respondent there was a brief by *Stark & Sutherland,* and oral argument by *Joshua Stark*. They argued, among other things, that it does not necessarily follow from the fact that a skilled engineer can demonstrate that from a given point in a highway the track of a railroad is visible

for any distance, that an individual in charge of a team approaching the track is negligent because he does not, from the same point, see a train approaching at great speed, in time to avoid a collision. *Massoth v. D. & H. Canal Co.* 64 N. Y. 524; *Kellogg v. N. Y. C. & H. R. R. Co.* 79 id. 72. As to.the degree of care required of a traveler on a highway when approaching a railway crossing, see *Chicago, St. L. & P. R. Co. v. Hutchinson*, 120 Ill. 587; *Guggenheim v. L. S. & M. S. R. Co.* 66 Mich. 150; *Schmidt v. B., C. R. & N. R. Co.* 75 Iowa. 696; *Loucks v. C., M. & St. P. R. Co.* 31 Minn. 526; *Thomas v. D., L. & W. R. Co.* 8 Fed. Rep. 729; *Newson v. N. Y. C. R. Co.* 29 N. Y. 383; *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 489; *Bower v. C., M. & St. P. R. Co.* 61 id. 457; *Piper v. C., M. & St. P. R. Co.* 77 id. 247.

TAYLOR, J.   This is an action brought by the respondent to recover damages for personal injuries alleged to have been caused by the negligence of the appellant.   The case was tried in the circuit court with a jury.   On the trial the jury rendered a special verdict, and upon such verdict the court directed judgment to be entered in favor of the respondent and against the defendant.   From such judgment the defendant appeals to this court.

It appears from the record that upon the rendition of the special verdict the defendant moved the court "upon the pleadings, record, papers, and proceedings had and on file herein, and upon the minutes of the judge before whom the issues in this action were tried, the testimony given upon the trial, the judge's charge, and upon the special verdict, for judgment in favor of the defendant herein, dismissing the complaint upon the merits, with costs," etc.   At the same time the plaintiff made a similar motion for judgment in her favor for the amount of the damages assessed by the jury, with costs.   The motion of the defendant was denied

by the court, and the motion for the plaintiff was granted and judgment entered in her favor.

The learned counsel for the appellant assign the refusal of the court to grant its motion for judgment in its favor as error upon which they rely for a reversal of the judgment by this court. No exceptions were taken by the appellant to the instructions of the court to the jury or to the facts found by the jury.

If the motion made by the counsel for the appellant ought to have been granted by the court below, it must conclusively appear from the evidence given on the trial, or from the facts found by the jury, or from both, that the plaintiff was guilty of negligence which contributed to her injury, and it is upon this theory that the learned counsel for the appellant argued the case in this court.

The following is the special verdict found by the jury:

" 1. Was the usual station whistle sounded when the engine was at or near the whistling-post?[1] *Answer.* Yes.

" 2. Was the engine bell rung continuously from a place at or near the whistling-post until the engine reached the crossing where the accident occurred? *A.* Yes.

" 3. At what rate of speed did the engine run from a point at or near the whistling-post to the place where the accident occurred? How many miles an hour? *A.* Forty-five miles an hour.

" 4. At what rate of speed was the horse traveling from a point about 200 feet east of the point of accident up to the point of accident? How many miles an hour? *A.* Three and a half miles an hour.

" 5. How far east from the place of the accident could an approaching engine be seen by a traveler on Oakton avenue, going in the same direction the plaintiff was, when at

---

[1] There was evidence tending to show that the whistling-post was about half a mile distant from the crossing at which the accident occurred.— Rep.

any point thereon between a point 200 feet east from the point of accident, and a point 100 feet therefrom? *A.* 2,600 feet.

" 6. How far east from the point of accident could an approaching engine be seen by a traveler on Oakton avenue, going in the same direction plaintiff was, at a point on said avenue about twenty feet east from the point of accident. *A.* 800 feet.

" 7. Was the defendant negligent in running the engine at the time of the collision? *A.* Yes.

" 8. Was the collision by which the plaintiff was injured caused by such negligence? *A.* Yes.

" 9. Was the plaintiff guilty of negligence which contributed to produce the injury suffered by her? *A.* No.

" 10. What damage has plaintiff sustained by reason of her injuries? *A.* $5,000."

It does not appear from the record that any other findings were requested by either party, nor were any exceptions made to the questions submitted to the jury, or to the findings of the jury thereon.

The learned counsel for the appellant have argued, with a good deal of force and earnestness, that the facts found by the jury conclusively show that the plaintiff was guilty of contributory negligence, notwithstanding that they have expressly found as one of the facts in the case that she was not guilty of such negligence. That these findings of fact do not of themselves prove conclusively that the plaintiff was guilty of negligence which contributed to her injury seems to us very clear. All that the jury have found as to the distance at which an approaching train could be seen at certain distances from the point where the street upon which she was traveling crossed the railroad, the blowing of the whistle, and the rate of speed at which both the plaintiff and the engine were traveling at the time, may be competent evidence tending to show such negligence on her

part; but they fail to establish such negligence as against the finding of the jury that she was not guilty. The last finding is supposed to be based upon the evidence, and the evidence might well have been of such a character as to have satisfactorily negatived the inference which might be drawn from such other findings. The findings are not inconsistent with each other, and, neither being excepted to, they must stand as well established by the evidence.

The learned counsel for the appellant has apprehended that his argument, based upon the findings alone, would not be sufficient to reverse the judgment, and so has resorted to the evidence preserved in the bill of exceptions for the purpose of showing that the finding that plaintiff was not guilty of negligence is wholly unsupported by the evidence. As the appellant made a motion in the court below to set aside the verdict and for judgment, because it was not supported by the evidence, it has a right to resort to the evidence in the record to sustain its contention that the finding of the jury was wholly unsupported by the evidence. We will consider very briefly the evidence upon the question of the negligence of the plaintiff. This evidence tends strongly to show that the plaintiff, under all the circumstances, was proceeding with ordinary care when she was struck by the train and injured.

The evidence shows that the plaintiff and her sister were passing along an east and west street or highway in the village of Pewaukee, coming from the east and going towards the west. This street crossed the railroad track at an acute angle of about 30°. The engine which struck and injured the plaintiff was proceeding in a direction north of west about 30°, so that the plaintiff in approaching the crossing would have her back partially towards the approaching train, and in order to see any considerable distance up the track it would be necessary to turn partially around in her seat. It was on a Sunday afternoon, when no train was due at the cross-

ing. The injury was done by an engine and tender alone, which was proceeding westward at a very high rate of speed, and at a grossly negligent rate through said village of Pewaukee, in violation of the statute which limits the rate of speed for trains in such locality. Both the plaintiff and the sister, who was with her in the carriage, testify that when they got within 200 feet of the crossing (measuring along the road they were traveling) they both looked up the track towards the east and west, and neither saw or heard any train. They also testify that when they crossed the first side track, a little over 100 feet from the crossing, they looked again, and saw nothing and heard nothing, and that they looked and saw nothing when between the first and second side tracks, and that the first either of them saw or heard of the engine was when the alarm was given by the coming engine near the water-tank about 400 feet from the crossing, when it was too late to avoid the injury. Other witnesses, who saw them approaching the crossing near the first side track, who passed them on the highway, say they appeared to be looking for the train, and these witnesses did not see or hear the engine approaching until the alarm was sounded near the water-tank. Others in the same vicinity, who testified, said they did not see or hear the approaching engine until the alarm was sounded near the tank. It is true some other witnesses testified that they heard the bell and the whistle when sounded near the whistling-post, and all the way to the crossing, but this evidence does not establish the fact with certainty that the plaintiff or her sister heard, or could have heard, the whistle and bell as they approached the track; it may tend to establish that fact, but it does not establish it as a matter of law,— it still remains a question of fact for the jury.

It is insisted that the plaintiff and her sister must have seen the engine approaching if they had looked at any place between about 200 and 100 feet from the crossing, and that

it is incredible to believe they did look and not see. They both testify, and their testimony is corroborated by two other witnesses, that they did look when about 200 feet from the crossing, and when about 100 feet, and saw or heard nothing. Considering the rapidity with which the engine was moving, it is quite probable that the engine was not in sight when the plaintiff was 200 feet from the crossing, and, although the train might have been in sight when they looked at the point about 100 feet from the crossing, it was probably in the cut spoken of by the witnesses, and not plainly visible, and might not have been seen by the plaintiff even at that point, although she looked for it. The speed at which the engine was moving at the time (from forty to fifty miles an hour), and it being in the cut spoken of by the witnesses, would tend to lessen the chances of her seeing it. It is true the engineer testifies that when he was 1,200 feet from the crossing he saw the plaintiff and her sister, and they were some distance east of the first side track. If this were true, it seems to us that the engine would have passed the crossing before the plaintiff reached it; and yet all the reliable evidence tends strongly to show that they were at the crossing about the time the engine reached the tank, 400 feet east of it. It must also be borne in mind that when the plaintiff got within seventy or eighty feet of the crossing, the approaching engine would be shut from the sight of the plaintiff and her sister approaching the crossing by the water-tank twenty-four feet wide, standing near the north side of the track, 400 feet east of the crossing, until they came within a few feet of the crossing.

Without any further statement or discussion of the evidence, we are satisfied that the question of the contributory negligence of the plaintiff was a question of fact for the jury, and not of law for the court, and that their finding upon that question must stand.

*By the Court.*— The judgment of the circuit court is affirmed.