## BATES v. FREMONT, E. & M. V. R. Co.

1. Section 5501, Comp. Laws, makes proof of the killing of stock by a railroad company *prima facie* evidence of the negligence of the company, and an averment, in the complaint in such an action, that the stock were so killed within the terms of the statute, is a sufficient averment of negligence on the part of the company.

2. Upon the trial, if the evidence leave the facts undisputed, and they are such that different conclusions or inferences could not reasonably be drawn from them, it becomes the duty of the court to declare their legal effect; but if the facts are in dispute, or, if undisputed, they are such that different impartial minds might fairly draw different conclusions from them, they should be submitted to the jury.

3. Evidence of defendant's witnesses that the whistle was blown and the bell rung at the usual distance from the crossing, and that of plaintiff's witnesses that they heard no whistle or bell, though sufficiently near to hear, and watching and listening for the same, creates a conflict as to the fact of the bell being rung or the whistle blown, which question, if material, should be submitted to the jury.

4. Where the plaintiff was driving a number of loose horses and mules along the highway in the afternoon, and towards a railroad crossing, the track for some distance being obscured by an intervening embankment, knowing that a train was due to pass during the afternoon, but not at what hour, the fact that he did not ride ahead, and hold his stock back until he could and did go to the track and ascertain whether or not a train was coming, is a fact tending to show contributory negligence, and as such should go to the jury with all the circumstances of the case, but it does not establish contributory negligence as matter of law.

CORSON, J., dissenting.

(Syllabus by the Court. Opinion filed December 9, 1893.)

Appeal from circuit court, Meade county. Hon. C. M. THOMAS, Judge.

Action to recover for injury to property alleged to have been negligently caused by the defendant. There was judgment for plaintiff, and a new trial denied. Defendant appeals. Affirmed. CORSON, Judge, dissenting.

*J. W. Fowler,* for appellant.

The defendant, by showing that it was free from negligence or carelessness, and that its train was being run with usual care and caution threw the burden of proof upon the plaintiff to show that the killing had been caused by gross negligence of the defendants.    This the plaintiff failed to do and it was error for the court to refuse to direct a verdict for the defendant. Volkman v. Railroad Co., 5 Dak. 69; Gay v. Railroad Co., 5 Dak. 514; Wainscott v. Railroad Company, 3 Bush. 149; Packwood v. Railroad Co., 7 Am. and Eng. 584; Talcott v. Railroad Co., 78 Ken., 621; 7 Am. & Eng. Ry. cases, 585; Williams v. Railroad Co., 3 Dak. 168; Maynard v. Railroad Co., 115 Mass. 460; Lock v. Railroad Co., 15 Minn. 362; Darling v. Railroad Co., 121 Mass. 121; Spaulding v. Railroad Co., 33 Wis. 582; Kerwacher v. Railroad Co., 3 Ohio St. 196; Lock v. Railroad Co., 15 Minn. 362; Railroad Co. v. Waterson & K., 4 Ohio St. 70; Railroad Co. v. Froesch, 57 Ill. 155; Railroad Co. v. Purvines, 58 Ill. 38.

The plaintiff should have used an extra degree of care to prevent his mules from going upon defendant's track and right of way, and if the defendant used an ordinary degree of care after the discovery of the mules upon the railroad track the plaintiff cannot recover in this case. Williams v. Railroal Co.; 3 Dak. 168; Maynard v. Railroad Co., 115 Mass. 460; Locke v. Railroad Co., 15 Minn. 362: Darling v. Railroad Co., 121 Mass. 121; Gay v. Railroad Co., 5 Dak. 514; Volkman v. Railroad Co.; 5 Dak. 69; Railroad Co. v. Byam, 80 Ill. 528.    The plaintiff, by driving his mules recklessly upon the track ahead of him and running loose was guilty of contributory negligence.    Abbott v. Railroad Co., 16 N. W. 266; Rogstad v. Railroad Co., 17 N. W. 287; Davey v. Railroad Co., 14 A. & E. 650; Mantel v. Railroad Co., 27 N. E. 161; Railroad Co. v. Cantrell, 10 So. 580.

Ordinary prudence, say the courts, requires one who enters upon a railroad crossing to use his senses for the purpose of ascertaining whether he may cross in safety.    16 N. W. 268; 17 N. W. 288; Brown v. Railroad Co., 22 Minn. 165; Railroad

Co. v. Houston, 95 U. S. 697; Allyn v. Railroad Co., 105 Mass. 77; Wright v. Railroad Co., 127 Mass. 440; Railroad Co. v. Elliott, 28 Ohio St. 340; Railroad Co. v. Bell, 70 Ill. 102; Railroad Co. v. Goddard, 72 Ill. 567; Railroad Co. v. Hatch, 79 Ill. 137; Railroad Co. v. Mathias, 50 Ind. 65; Haines v. Railroad Co., 42 Iowa, 227; Benton v. Railroad Co., 41 Iowa, 192; Railroad Co. v. Righter, 42 N. J. Law, 180; Zimmerman v. Railroad Co., 71 Mo. 476; Ormsby v. Railroad Co., 14 R. I., 7; Thompson on Negligence, page 426; Wharton on Negligence, Sect. 382; Railroad Co. v. Hobbs, 19 A. & E. 337; Henze v. Railroad Co., 2 A. & E. 212; Railroad Co. v. Dimick, 2 A. & E. 201; Railroad Co. v. Righter, 2 A. & E. 220; Kelley v. Railroad Co., 13 A. & E. 638; Railroad Co. v. Howard, 80 Ill. 88.

The undisputed testimony showing that the defendant's train was duly equipped with all modern appliances for the preventing of accidents, and with competent train men, and the evidence on behalf of the plaintiff showing that he not only did not attempt to prevent the injury but contributed to it by actually driving the mules upon the track in front of the train, it was error for the lower court to submit the case to the jury. Abbott v. Railroad Co., 16 N. W. 266; Ragstad v. Railroad Co., 14 A. & E. 648; Railroad Co. v. Skinner, 19 Pa. St. 298; Story v. Brennan, 15 N. Y. 524; Poleman v. Johnson, 84 Ill. 629; Nichols v. Luce, 7 Wend. 160.

*M. McMahon,* for respondent.

KELLAM, J. This is an action to recover the value of two mules conceded to have been killed by defendant's train at a point where defendant's track crosses the public highway. The plaintiff had judgment, and after denial of a motion for a new trial, defendant appealed.

In his oral argument, appellant contended that the complaint itself was fatally defective, in that it did not expressly allege negligence on the part of the defendant in causing the injury complained of. Section 5501, Comp. Laws, makes proof

of the killing *prima facie* evidence of the negligence of the company, so that, when the killing is established, the negligence is also sufficiently proved, until the defendant, by evidence, disproves the *prima facie* case of negligence so made. The general rule is that it is only necessary to plead what, if proved, will entitle the pleader to the relief he asks; but proving the killing also proves the negligence, and these two elements constitute the cause of action or claim for relief. It seems to be logical that, when the statute attaches a definite effect to a fact, pleading of that fact is also pleading its legal effect. Such is the view of the Iowa court, and it is so held in several cases. See Engle v. Railway Co., (Iowa,) 37 N. W. 6, in which it is said that the allegation of negligence is redundant. See, also, Rose v. Railway Co., 75 Iowa, 625, 34 N. W. 450, where the only question was as to the necessity of such averment. The court held it unnecessary. In Seska v. Railway Co., 77 Iowa, 137, 41 N. W. 596, the same rule was again declared. In Railway Co. v. Brown, (Ark.) 4 S. W. 781, the court said: "The objection that negligence on the part of the company is not averred is not well taken. It was shown that the stock was injured by the company's train, and that the statute makes *prima facie* evidence of negligence. A legal conclusion need not be alleged." Railway Co. v. Snavely, 47 Kan. 637, 28 Pac. 615, was an action for damages by fire under a statute making proof of the setting out of the fire by the company *prima facie* evidence of negligence. Upon the question now under consideration the court said: Whenever sufficient facts are alleged in the plaintiff's pleading which would, if proved, make out a *prima facie* case against the railroad company, sufficient facts are alleged to constitute a cause of action against the railroad company. It might be better to plead negligence expressly; but, when a plaintiff has alleged all the facts which he is required to prove to make out a *prima facie* case, it would seem that his pleading ought to be held good." See, also, Hindman v. Navigation Co., (Or.) 22 Pac. 116. We think the omission

to expressly charge negligence was not a fatal defect in the complaint.

Upon the trial the plaintiff proved the killing of the mules and their value. He also testified that at the time of the accident he was driving these mules, with other stock, along the highway; that he did not know at what time the train passed, only that it was in the afternoon; that shortly before he reached the crossing he "slacked up" to see if he could hear or see any train, looked two or three times each way, and could not see or hear any. He then went forward with his stock, and when close to the track and about to cross, he for the first time heard the engine whistle, but not in time to prevent the stock attempting to cross. He says, "No man on earth could have then stopped them." In thus attempting to cross the track the two mules were killed. With this testimony the plaintiff rested. Defendant moved the court to direct a verdict in its favor, which was refused, but the refusal is not assigned as error. The defendant then introduced as witnesses the engineer and fireman in charge of the engine. Their testimony was that, before crossing the highway where the accident occurred, the track ran for some distance through a deep cut, which obstructed the view between the track and the highway where the defendant was driving his mules, the track and the highway crossing each other diagonally; that this cut so obstructed the view between the track and the highway up to a hundred feet of the crossing; that at the usual distance from the crossing the whistle was blown and the bell rung, and that on emerging from the cut, and as soon as the stock were discovered near the track, the whistle was again successively blown, and the air brakes applied, and every precaution taken to prevent the accident. A witness who was a passenger on the train also testified that the whistle was blown for the crossing, and afterwards the "danger whistle" was blown. As against this testimony, and in rebuttal of it, a witness for the plaintiff testified that he was on the south side of the track,

where he could see both the track and highway; that he was from a hundred to a hundred and twenty rods from the crossing, on the opposite side of the track from plaintiff and his stock; that he saw both the stock and the train approaching the crossing, and, apprehending an accident, gave particular attention to what he saw and heard; that he listened to see if they would blow the whistle; that he heard no whistle until "they blowed the danger signal right close to the crossing." Upon this evidence the defendant moved the court to direct a verdict for the defendant, for the reason "that there is no evidence of negligence on the part of the defendant offered by the plaintiff in rebuttal of the evidence of defendant," and that the statutory presumption of negligence on account of the killing was entirely overcome by the evidence; and the refusal of the court to so direct is the root of all the error assigned.

The ground of defendant's liability, if liable at all, was negligence. When the killing was proved, a *prima facie* case of negligence was proved. Comp. Laws, § 5501. The defendant might then present evidence to show its freedom from carelessness or negligence, and thus meet and disprove the presumption that, under the statute, follows the unexplained fact of killing. It might show in a case like this, as it did attempt to do, that the whistle was sounded and the bell rung at a proper distance from the crossing, that those in charge of the engine kept a careful lookout ahead, and that, as soon as the obstruction was discovered, every effort was made to prevent the accident, both by frightening the stock from the track and by stopping the train; or it might show that the carelessness of the plaintiff, and not its own, was the proximate cause of the injury. Then, as in other cases, the plaintiff may introduce rebutting testimony, denying, explaining, or qualifying the evidence offered by defendant. If this testimony, when in, leaves the facts undisputed, and they are such that different conclusions or inferences could not reasonably be drawn from them, it becomes the duty of the court to declare their legal

effect; but if the facts are in dispute, or, if undisputed, they are such that different impartial minds might fairly draw different conclusions from them, they should be submitted to the jury. Wiliams v. Railroad Co., 3 Dak. 168, 14 N. W. 97; Mares v. Same Defendant, 3 Dak. 336, 21 N. W. 5; Railroad Co. v. Van Steinburg, 17 Mich. 122; Railroad Co. v. Stout, 17 Wall. 657; Norton v. Ittner, 56 Mo. 351; Abbett v. Railway Co., 30 Minn. 482, 16 N. W. 266; Totten v. Railroad Co., 10 N. Y. Supp. 572. See, also, 11 Amer. & Eng. Enc. Law, p. 463 et seq.; 2 Thomp. Neg. p. 1236. Applying the principle of the cases cited to this case, I think there was no error in the refusal of the trial court to direct a verdict for the defendant on the ground that there was no evidence from which the jury might find negligence on the part of the defendant.

It is reasonably plain that, if the jury gave full credit to the testimony of defendant's witnesses, the verdict should have been for the company; but they were not obliged to do so. The plaintiff had testified that he had heard no whistle or bell until the engine was close to the crossing. He says: "It was close on me when it whistled; not further off than across this room." The witness Raymond testified that he was from a hundred to a hundred and twenty rods from the crossing, and saw both train and stock approaching the crossing, and knew that, unless one or the other stopped, "there was going to be a collision;" that he "was listening, wandering whether or no they would blow the whistle;" that he saw the train "on the upper end of the cut, coming this way;" that he "heard no whistle until they blowed the danger signal right close to the crossing." Both the engineer and fireman had testified that the whistle was blown and the bell rung the usual distance from the crossing, which they said was about 80 rods. The fireman, however, testified that the train was in the cut before the whistle was blown. The jury might have believed that the witness Raymond, whose attention would be noturally fixed, as he says it was, by his apprehension of an impending accident, would be

more liable to be correct as to the blowing of the whistle than either the engineer or the fireman, to whom it was an occurrence so frequently repeated that, in the absence of unusual circumstances to fix their attention upon it at the time, it would naturally have left no distinct impression on their memory. It is not always true that positive testimony must prevail over negative. Surrounding circumstances may greatly affect the comparative value of each. This testimony of this witness as to his nearness to the train, that the day was clear and still, that he was attentively watching and listening to see "whether or no they would blow the whistle," and that he did not hear it, clearly presented a conflict with the evidence of defendant's witnesses that the whistle was blown, and made a question for the jury. If they believed the defendant's witnesses were mistaken as to the blowing of the whistle and the ringing of the bell, and that no whistle was blown or bell rung until the danger was too imminent to be avoided, and that such failure to give notice of their approach was the cause of the accident, and that plaintiff was not negligent, then they might have found for the plaintiff. We think that, within the latitude of judgment and inference which a jury is entitled to exercise, they might have found either way.

Appellant further contends that the plaintiff himself was guilty of such contributory negligence as would prevent his recovery. We think this question, like that of the negligence of the defendant, was, upon the evidence, a question for the jury. The plaintiff had testified that he did not know at what time the train was due or usually passed the place of the accident, only that it came along during the afternoon; that before he reached the crossing he "slacked up," and listened and looked, but heard or saw no train; that he "slacked up on a walk on purpose to watch and hear." It was in the day time, and there was no wind or storm to interfere with his hearing an approaching train. On one side of the highway the track runs through a

cut to within a hundred feet of the crossing, whose bank obstructed the view between the highway where the plaintiff was and the track. Appellant contends that respondent should have gone forward to the track, and thus ascertained whether or not a train was approaching, and that he was guilty of negligence in not doing so. The jury might have so found as a matter of fact, under all the circumstances, but we do not think the court could have so ruled as a matter of law. There is no arbitrary, inelastic rule regulating what a person on the highway approaching a railroad crossing shall do to avoid the imputation of negligence. In Kellogg v. Railroad Co., 79 N. Y. 76, where the claim of contributory negligence on the part of the deceased was made, the court said: "Under all the circumstances surrounding the accident, we think it was for the jury to determine whether he exercised that care which the law required of him. He could probably have avoided the accident by stopping before he passed upon the track; but that is a degree of care not usual, even with very prudent men.  *  *  * There may be cases where a traveler ought to do so, and, if he omits to do so, it would be one of the facts, with all the others, to be submitted to the jury." See, also, Tyler v. Railroad Co., 137 Mass. 238; Totten v. Railroad Co., *supra;* Railroad Co. v. Crawford, 24 Ohio St. 631; Railroad Co. v. Van Steinburg, *supra;* Hahn v. Railroad Co., 78 Wis. 396, 47 N. W. 620. See, further, Shear. & R. Neg. § 477, note, where it is stated that the great weight of authority is in favor of the rule that it is for the jury to decide whether, under the circumstances of any particular case, failure "to look and listen" is such contributory negligence as will defeat a recovery. But in this case the plaintiff did slacken his horse "to a walk," and "walked quite a little ways" to see if he "could see or hear any train." He says he could not, and "thought the crossing safe." It will be remembered that plaintiff was driving a bunch of loose horses and mules along the highway. He says they were strung out before him, and going on a trot. It does not appear whether

they were going at that pace of their own accord, or he was urging them. That, for some distance back from the crossing, but how far we are unable to tell from the evidence, he could not, on account of the embankment, see the train in the direction from which it was coming, without going clear to the track. To do this he must, if he could, have ridden ahead of the horses and mules he was driving, and held them back until he could go to the track and make the observation. Perhaps he should have done this. We think the evidence tends to show negligence on his part, but does not establish it so conclusively as to justify the court as so declaring as a matter of law. We think the correct rule for this case is announced in Hoyt v. City of Hudson, 41 Wis. 112: ''If such negligence conclusively appears, the court will nonsuit the plaintiff, or direct the jury to find for the defendant. If the evidence only tends to show such contributory negligence, the question must go to the jury, to be determined, like any other question of fact, upon a preponderance of the evidence.'' Possibly the judges of this court, from a simple reading of the evidence, might have reached a different conclusion, but the trial jury had advantages superior to ours, growing out of a direct contact with the witnesses themselves. Added to this, the trial court, with the same advantages for judging of the candor and fairness and intelligence of the witnesses, and with the impression which the evidence made upon him still fresh in his mind, refused to set aside the verdict; and, while we are not entirely satisfied that upon the evidence the plaintiff should have recovered, we are of the opinion that this court could not disturb the verdict without violating well established rules of appellate practice. The judgment of the circuit court is affirmed.

BENNETT, J., concurs.

CORSON, J., *(dissenting.)* I am compelled to dissent from the views expressed by a majority of the court, and I will briefly state my reasons for such dissent. I am of the opinion that the evidence of the plaintiff on the trial of this case estab-

lished the fact that he was guilty of such contributory negligence as would, as a matter of law, preclude him from recovering in this action. I fully agree with the rule laid down by Mr. Justice KELLAM in the majority opinion, that when the facts are disputed, or, if not disputed, they are such that different minds might draw different conclusions therefrom, they must be submitted to the jury; but, in my view of this case, the facts are not only undisputed, but are such that only one conclusion can be fairly drawn from them. It appears from the undisputed evidence that the train which caused the injury was the south-bound passenger train, and before reaching the crossing it passed through a cut for about sixty rods, terminating about 100 feet northerly of the crossing; that the train while in the cut could not be seen by persons passing southerly along the highway until they were within a short distance of the crossing. The plaintiff was driving his loose stock along the highway in a southerly direction. With these observations as to the relative position of the railroad track and highway, and the obstruction to the view of a train while in the cut from the highway, we will proceed to examine the testimony of the plaintiff as to the manner in which he approached the track and attempted to cross it. His testimony is as follows: "Before I got to the crossing I slacked up on a walk, to see if I could see or hear any train, and I could not. Walked quite a little ways, and thought the crossing safe and the mules and horses were trotting, though they were loose, and I kept up with them; and two or three times I looked both ways. Then, before I got to the crossing, looked up, and did not know why I could not get over. The first thing I knew the train was coming down atop of me. I looked first to head them off if I could, and I saw the head of them was within a few feet of the track—maybe five or six feet. I saw it was impossible to save them. I did not want to stand here and see them killed, so I thought I would get them over the track. I think a part of them had got through, and they had got over,

before I could get to them, so I done all I could to get them over. * * * This was about April 5, 1889. I was driving the mules from the north; coming this way, and driving them across the public crossing. I don't know about the train time. The train generally came along in the afternoon. Of course, I don't know the time it did come, but I slacked up on a walk on purpose to watch and hear. I was not posted as to the exact time the train ran. I knew there was a public crossing over the railroad at that point. I heard the train whistle, but it got up close to me; would have been onto me anyway. I took out my blacksnake and whipped—attempted to whip—the mules across this crossing. The head one was just about stepping onto the track when I heard it, and the others were strung out behind her. I had five or six head strung out ahead of me. I knew there was a crossing there, because I had been up and down that road. I had passed on that road before." It will be observed that the plaintiff says he "slacked up and looked and listened" at some point, but at what point does not fully appear; but it was evidently quite a distance from the crossing as he says he "walked quite a little way" and then kept up with the stock, which was trotting; that while thus trotting along with the stock, directly towards the crossing, he looked both ways two or three times, and before he got to the crossing he looked up, and did not see why he could not get over, and, before he got over the train passed and two of his mules were killed. He admits that he knew that the train passed sout.. in the afternoon, though the exact time he did not know, and that he was acquainted with the crossing, having passed over the road before. The plaintiff does not say or claim that he stopped immediately before crossing and "looked and listened" or that he took any precautions, immediately before attempting to cross, to ascertain whether or not he could do so safely, except, as he trotted along with the horses and mules, he looked both ways. But as we have seen, in looking in the direction from which a train might be expected, his view was obstructe

by the intervening bank of earth between the highway and track.    He does not say that he listened, but, had he done so, it would probably have beeen useless, as the noise made by his trotting mules and horses would have prevented his hearing the noise of the train.

"The rule requiring one about to cross the tracks of a railroad company to stop, look, and listen for an approaching train is a clear and certain rule of duty, and a failure to observe it is more than evidence of negligence; it is negligence itself." Headnote in case of Greenwood v. Railroad Co., 124 Pa. St., 572, 17 Atl. 188.    And Chief Justice PAXSON, in delivering the opinion of the court in that case, says: . "If the rule to stop; look, and listen were always observed, an accident at crossings, now so frequent, would rarely occur, whether in town or country.    *    *    *    The rule itself is so valuable, is sustained by such abundant authority, and is, moreover, founded upon such excellent common-sense reasons, that we will neither depart from it nor allow it to be undermined by exceptions.    It is a clear and certain rule of duty, and a departure from it is more than evidence of negligence; it is negligence per se."    By this rule it is evidently meant that the party "must stop, look, and listen" at a point near the railroad track, and immediately before attempting    to cross,    in all cases    where from any cause the view of the track is obstructed, whether such obstruction be permanent or temporary.    This is well illustrated in Haas v. Railroad Co., 47 Mich. 401, 11 N. W. 216.    In that case the plaintiff's intestate stopped about three rods before reaching the crossing, and then drove on a brisk trot from that point to the track, in crossing which he was struck by the engine, and killed.    The court below directed a verdict for the defendant.    Cooley, J., in delivering the opinion of the court affirming the judgment, said:    "To excuse this we are told that the crossing was peculiarly exposed to danger because of the banks on either side of the approach, and that it was the duty of the railroad company, because of this, to observe extraordi-

precautions. We may concede this, but it does not aid the plaintiff. The peculiar risks of the crossing imposed upon the decedent the duty of special caution also; and, as he knew that a regular train was due at the crossing at about that time, he was under the highest possible obligation to observe such precautions as would be needful to avoid a collision. Railroad Co. v. Beale, 73 Pa. St. 504. We may concede that the railroad company failed to sound the bell; but this did not relieve the decedent from the duty of taking ordinary precautions for his own safety, (Railroad Co. v. Houston, 95 U. S. 697, 702;) and what ordinary prudence would demand must be determined on a view of all the circumstances. It is vain to urge or to pretend that ordinary precautions were made use of in this case. To move forward briskly, as the decedent did, from a point whence an approaching train would not be seen, at a time it was known by him that a train was due, and not to pause until the train was encountered, was so far from being ordinary prudence that it approached more nearly to absolute recklessness." In Fletcher v. Railroad Co., 149 Mass. 127, 21 N. E. 302, the supreme conrt of Massachusetts lays down the following rule: "As a general rule, a person is not in the exercise of due care who attempts to cross a railroad track without taking reasonable precaution to assure himself, by actual observation, that there is no danger from approaching trains." Again the court says: "The rule as to looking for trains when about to cross a railroad track, laid down in the cases we have cited, prevails in nearly all the courts in this country;" and the court cites approvingly the following from the decision in McCrary v. Railroad Co., 31 Fed. 531: "The law lays it down clearly, that a man must look and listen; and if, by looking and listening, he could ascertain the approach of a train, and fails to do so, he is guilty of contributory negligence and cannot recover." See, also, Railway Co. v. Grames, (Ind.) 34 N. E. 613; Railway Co. v. Butler, 103 Ind. 31, 2 N. E. 138; Railroad Co. v. Beale, 73 Pa. St. 504; Seefield v. Railway Co., 70 Wis. 216, 35 N. W. 278;

Marty v. Railway Co., 38 Minn. 108, 35 N. W. 670; Chase v. Railroad Co., 78 Me. 346, 5 Atl. 771; Heaney v. Railroad Co., 112 N. Y. 122, 19 N. E. 422; Railway Co. v. Stommel, 126 Ind. 35, 25 N. E. 863; Railroad Co. v. Righter, 42 N. J. Law, 180; Henze v. Railroad Co., 71 Mo. 636; Turner v. Railroad Co., 74 Mo. 602; Wilds v. Railroad Co., 24 N. Y. 430; Griffin v. Railway Co., 68 Iowa, 638, 27 N. W. 792.

In the case at bar the plaintiff knew, as all persons know who approach a railroad crossing, that it is a place of danger, and that this crossing was especially so at that time of day, when the south bound train was liable to pass at any moment, and still more especially dangerous at that point, as the train, before reaching the crossing, was for a time hidden from his view in the cut. The care to be exercised by one in crossing a railroad track must be commensurate with the danger. "The greater the danger, the greater the precaution required of him. He must not only do what an ordinary prudent man would do under like circumstances, but he must exercise such care and diligence as are commensurate with the danger that confronts him." Railway Co. v. Grames, *supra.*

Some importance seems to be attached in the majority opinion to the fact that the plaintiff was embarrassed by driving loose stock, over which he had not such immediate control that he would have had had they been led, or harnessed to a vehicle. But this fact cannot change the rule of law. The fact that he was so embarrassed imposed upon him greater vigilance and caution. The defendant was not responsible, and ought not to suffer because of the embarrassed position in which the plaintiff had placed himself. It was not caused by any act of the defendant. I am of the opinion, therefore, that plaintiff's loss was caused by his own negligence, and want of that care which a prudent man ordinarily exercises, and which the law requires of one about to cross a railroad track to exercise. As before stated, every one is presumed to know and realize that a railroad crossing, under the most favorable circumstances, is a

place of danger, as not only regular trains may not pass on time, but extra trains and specials may pass along at any moment. The rule, therefore, that a person who desires to cross the track at a highway crossing must, for his own safety and for the safety of his property, when from any cause his view of the track is obstructed, immediately before crossing, "stop, look and listen," is a wise and salutary one, and a person who fails to observe it, and chooses to encounter the peril without taking the precaution the law requires, must assume the risk. Who, upon reading the plaintiff's evidence, can for a moment doubt that had he, immediately before attempting to cross, or permit his stock to cross, the track, stopped, looked and listened, he would have seen or heard the train then approaching the crossing, and thus avoided the accident that occurred? The law makes it his duty to ao so, and, failing to perform a plain duty thus imposed, he cannot recover. The judgment should, in my opinion, be reversed.