BRUNICK v. ANN ARBOR RAILROAD CO.

RAILROADS—KILLING CATTLE AT CROSSING — CONTRIBUTORY NEGLIGENCE OF DRIVER—QUESTION FOR JURY.

Plaintiff's cattle, while crossing a railroad track in the highway, were killed by a wild engine. If the bell had been rung and the whistle sounded as required by the statute, plaintiff's two sons, who were driving the cattle, would have been able to prevent the accident. Just before reaching the track, the cattle stopped to drink at a pond. It did not appear that, if the drivers had at that time gone forward upon the track, they would have seen the engine, or that such precaution would have prevented the injury. *Held,* that whether the drivers were guilty of contributory negligence was a question of fact for the jury. GRANT, J., dissenting.

Case made from Wexford; Chittenden, J. Submitted November 21, 1902. (Docket No. 112.) Decided February 3, 1903.

Case by Everett Brunick against the Ann Arbor Railroad Company for the alleged negligent killing of plaintiff's cattle. There was a judgment for defendant on verdict directed by the court, and plaintiff assigns error. Reversed.

*Sawyer & Bishop,* for appellant.

*T. W. Whitney,* for appellee.

MONTGOMERY, J.  This is an action on the case, brought by Everett Brunick against the Ann Arbor Railroad Company, to recover the value of certain cattle killed by a wild engine on a highway crossing in the township of Richland. The whole case turns upon the question of contributory negligence, and there is practically nothing else involved, so far as the hearing in this court is concerned.  On this particular evening the plaintiff's cattle were being driven along the highway by his two sons.  When they came to this crossing, the cattle stopped to drink at a pond in the highway near the railroad track, and the boys waited for them to come out and proceed homeward.  When they had finished drinking, they returned to the highway, and pursued their course, cattle fashion, one behind the other. When about half of them were over the track, this wild engine suddenly appeared, and struck them amidships, so to speak, killing some five or six of them, but leaving unharmed the cattle at either end of the procession.

It was the claim of the plaintiff that the boys were so situated that they could and would have been able to clear the track of these cattle in time for the engine to pass had the bell been rung and the whistle sounded in accordance with the statute, and that they were on the lookout for danger, and were exercising all the care possible with a large herd of cattle, and that the sole cause of the accident was the negligence of the trainmen in failing to give the proper warning of their approach.  The defendant claimed that the boys were negligent in not going onto the track, and there waiting until the cattle had all passed. The circuit judge took this latter view of the case, and directed a verdict of no cause of action.  The error complained of is in not leaving the question to the jury to say whether or not the boys were exercising ordinary care in the management of these cattle, and whether or not they were so situated that they could have prevented the accident had the proper signals been given.

We think the case presented a question of fact for the jury.  The case is quite different from one of an attempt

to cross a track with a team of horses, which the driver is presumed to have in hand and be able to control. There was no noise of a wagon to prevent these boys from hearing an approaching train. It is true, their view was obscured, but, had they gone to the track and looked when the cattle stopped to drink, and then returned to drive the cattle across the track, it is not clear that this precaution would have prevented the injury. True, the defendant's witnesses testify that the approaching engine could have been seen two miles away, as it passed Lucas; but, had they gone to the track to look when the cattle first stopped to drink, and then returned to drive the cattle, it is probable that they would not have seen the approaching engine. It was a still night, and they relied upon their sense of hearing and their knowledge that no train was due. The jury might have been justified in saying that this was negligent, but we think the question was for the jury. A case directly in point is *Bates* v. *Railroad Co.*, 4 S. Dak. 394 (57 N. W. 72). See, also, *Snook* v. *Clark*, 20 Mont. 230 (50 Pac. 718); 2 Thomp. Neg. (2d Ed.) § 2011.

Judgment will be reversed, and a new trial ordered.

HOOKER, C. J., MOORE and CARPENTER, JJ., concurred with MONTGOMERY, J.

GRANT, J. (*dissenting*). The facts in this case are undisputed. It was dark. Plaintiff's two sons were familiar with the situation, and knew and fully comprehended the danger at the crossing. Their vision was obscured, so that they could not see the headlight of an approaching engine. They stood 100 feet from the track while their cattle drank at the pond beside the road. As they drank they came back into the road, and walked, cattle fashion, towards the track. Standing at the crossing or near it, the headlight of the engine could be seen coming two miles distant. The negligence of the defendant in failing to blow its whistle and ring its bell is established by the finding of the jury.

There is no dispute as to the rule of law. Where there is a conflict in the testimony, and where different minds may reasonably draw different conclusions from undisputed facts,—some that there is negligence, and others that there is not,—the question belongs to the jury to determine. The facts being undisputed, is this a case where reasonable minds can draw different conclusions? Can one mind reasonably say that the plaintiff's sons were not guilty of contributory negligence, and another that they were? This depends upon the determination as to what care they were required to take to protect the property in their charge, and as well to protect the property of the defendant, its employés and passengers. In case of a collision some of the cattle were sure to be killed or injured. The engine was liable to be derailed, causing injury to property, and injury, if not death, to defendant's employés. Yet the contention is made that these young men had the right to rely upon the absolute performance of duty by the defendant's engineer and fireman in giving the signals, and that they themselves had done all required of them when they stopped and listened 100 feet from the track, where they stood about five minutes. It cannot be successfully disputed that, without incommoding themselves, they might easily have prevented the accident. The two were not needed to drive the cattle along the road. One could have gone to the track and watched for a train, while the other waited until all the cattle had finished drinking, and then followed them up. Had they done so, the accident would certainly have been avoided. It is of no consequence that it was not time for a regular train. Every traveler is chargeable with knowledge that regular trains are often behind time; that sometimes they are run in sections; that special trains, and what are known as "wild" trains and "wild" engines, are run over these railroads, and must, of necessity, be run in order to do the work required of them. *Vincent* v. *Steamship Co.*, 48 La. Ann. 933 (20 South. 207, 55 Am. St. Rep. 287). Therefore the duty to take at least ordinary precautions

for one's own safety and the safety of those upon the
trains is required of every traveler in making these cross-
ings. The circuit judge, in directing a verdict, used the
following language:

"It would seem that these young men, standing there
for five minutes, if they desired to run that risk, and stay
there, waiting for the bell to ring or the whistle to blow,
that they were certainly guilty of negligence. They had
plenty of opportunity—they had five minutes, according to
their testimony—to go to the track and look up and down,
and see whether there was any danger in the cattle cross-
ing the track. Instead of doing that, they stood 100 feet
from the track, allowed the cattle to drink from this water
hole, pass out, and rove over the track, without taking any
precaution on their part to see whether an engine or a train
was coming; and it seems to me that, under these circum-
stances, they did not use and employ all reasonable means
at their disposal to ascertain whether there was any dan-
ger in the cattle crossing the track."

Here we have two persons, travelers, in charge of a
large herd of cattle; not one person in charge, as was the
case in *Bates* v. *Railroad Co.*, 4 S. Dak. 394 (57 N. W. 72).
In that case the decision was by a majority of the court.
In the majority opinion it was held that the evidence
tended to show negligence, but did not establish it so con-
clusively as to justify the court in deciding it as a matter
of law. The only act of contributory negligence claimed
was in failing to go forward to the track and ascertain
whether a train was approaching. Justice Corson filed
an able dissenting opinion, in which he gives the testi-
mony of the plaintiff in full, and cites many authorities to
sustain his position. In *Snook* v. *Clark*, 20 Mont. 230
(50 Pac. 718), the highway led through a narrow canon.
The right of way was not fenced, and the negligence charged
was a failure to fence the right of way and to maintain a
cattle-guard. The cattle were evidently killed on the right
of way, and not in the highway. The contributory negli-
gence claimed was "in driving his stock into the canon
without taking proper steps to avoid coming in collision
with the train," and in not riding down the track to stop

the train by flagging when he heard it approaching. It was held that he could not have flagged the train without exposing his life in riding along a deep and dangerous cut. These cases are so different in their facts that I do not regard them as authority in this case.

If these two young men had been driving six heavily loaded teams, tied together, one after the other, or if they had been so well broken as not to require a driver, but would follow without being tied to the team in front, would they have been justified in stopping 100 feet from the track to listen, and then walking behind the teams the rest of the way to the track, assuming that no train would come? Or, if these cattle had been tied together, with a leader in front, and they had stopped at the same distance to listen, and then driven on, both drivers being behind, would that have been the exercise of due diligence? Would not common prudence dictate that one should be in front of the procession, and the other in the rear, when they were about to cross the track? The fact that the cattle were loose does not change the rule of law. If anything, they were bound to greater care when they were loose, because they would be more beyond their control than when tied together. I deem it unnecessary in this case to discuss the question of the duty of one traveler driving cattle along the highway. That is not this case. Here were two. One could have gone ahead, while the other remained, and thus have secured the passage in perfect safety. I think it was their clear duty to do so.

I think the judgment should be affirmed.